509 A.2d 1202

SINAI HOSPITAL OF BALTIMORE, INC. et al.

v.

MARYLAND HEALTH RESOURCES PLANNING
COMMISSION et al.

No. 103, Sept. Term, 1985.

Court of Appeals of Maryland.

June 10, 1986.

Richard G. McAlee and Stephen J. Sfekas, Baltimore, for appellant.

Jack P. Hartog and John J. Eller, Baltimore, for appellee.

Argued before SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired, Specially Assigned).

RODOWSKY, Judge.

Appellants, Sinai Hospital of Baltimore, Inc. (Sinai) and North Charles General Hospital (North Charles), appeal from a judgment of the Circuit Court for Baltimore City affirming an order of the Maryland Health Resources Planning Commission (Commission) which had denied each hospital's separate application for a certificate of need (CON) to perform open heart surgery. Sinai and North Charles argue, in essence, that the Commission failed to give controlling effect to the State Health Plan which they contend determines need under the circumstances here. For the reasons set forth below we shall affirm.

Md.Code (1982, 1985 Cum.Supp.), §§ 19–101 to –125 of the Health-General Article comprise the subtitle "Comprehensive Health Planning" of the title, "Health Care Facilities."[1] A priority of this State is "to promote the development of a health care system that provides, for all citizens, financial and geographic access to quality health care at a reasonable cost." § 19–102. The Commission is an independent commission that functions within the Department of Health and Mental Hygiene. § 19–103. One of the Commission's duties is to adopt, at least every five years, a State Health Plan (SHP). Section 19–114(a)(2) in relevant part states that

[t]he plan shall include:

(i) A description of the components that should comprise the health care system;

(ii) The goals and policies for Maryland's health care system;

(iii) Identification of unmet needs, excess services, minimum access criteria, and services to be regionalized;

(iv) An assessment of the financial resources required and available for the health care system; [and]

---

1. All references to the Maryland Code are to the Health-General Article, unless otherwise indicated.

(v) The methodologies, standards, and criteria for certificate of need review[.]

We are concerned in this case with the 1983–88 SHP which consists of two volumes. Volume I, containing the Commission's policies, standards, and need projection methodologies, is a regulation which became effective September 10, 1984. COMAR 10.24.07.01, 11 Maryland Register 1584–85, August 31 (1984). Volume II amplifies and explains the substance of Volume I but is not part of the regulation. The SHP sets policies and standards specifically relating to the availability, accessibility, cost, and quality of cardiac surgery (CS), and the SHP establishes a need methodology for authorizing additional CS programs.

Before a person can develop, operate, or participate in certain health care projects the Commission must issue a CON. § 19–115. The purpose of this requirement, as explained in the SHP, is "to ensure that changes in service capacity and major expenditures for health care facilities are needed and affordable, and consistent with the Commission's policies." Code § 19–115(c) directs the Commission "to adopt rules and regulations for applying for and issuing [CONs]." The rules and regulations, entitled "Procedures for Application Review," which governed the CON applications in the instant case were COMAR 10.24.01.07, 10 Maryland Register 541–46, March 18 (1983) (Reg. 07).[2]

In September 1983, each appellant applied for a CON to conduct an open heart surgery program in the Central Maryland Health Service Area. Only Johns Hopkins, University of Maryland, and Saint Joseph hospitals offer open heart surgery programs in Central Maryland. Because both applications sought approval for similar projects in the same area, they were subject to a comparative review. *See* Reg. 07B(1). After the Central Maryland Health Systems

---

**2.** These regulations were superseded on April 23, 1984, but the new regulations apply only to those CON applications submitted after that date. *See* COMAR 10.24.01.23, 11 Maryland Register 715, April 13 (1984).

Agency, a local health planning agency, had recommended Sinai, and the Commission's staff had recommended North Charles, the Commission designated one of its members to hold a hearing pursuant to § 19–118(d)(2). Appellee Saint Joseph Hospital (St. Joseph) participated in that hearing. During the pendency of these proceedings before the Commission, on September 10, 1984, the 1983–88 SHP went into effect and became the SHP applicable to this case. In a proposed decision of October 26, 1984, the hearing officer-commissioner recommended awarding the CON to Sinai. Despite her serious concern over the lack of excessive waiting times for CS procedures, she felt compelled under the SHP need methodology to find a need for one program.

The full Commission met on November 13 and voted to deny both applications. On November 26, 1984, a final written decision was issued setting forth the Commission's findings and conclusions. The Commission found that at the three hospitals authorized for CS programs the times from registration for surgery to actual surgery were reasonable. Based largely on that finding the Commission further found that there was no present need for an additional cardiac surgery program, although the Commission recognized that the methodology adopted in the SHP predicted a need in 1986. In rejecting both applications the Commission basically gave determinative weight to a review criterion in Reg. 07.

Sinai and North Charles appealed to the Circuit Court for Baltimore City which affirmed the Commission. We issued the writ of certiorari before consideration of the matter by the Court of Special Appeals.

Code § 19–118(c)(1) requires the Commission to consider both the SHP and Reg. 07.

All decisions of the Commission on an application for a certificate of need, except in emergency circumstances posing a threat to public health, shall be consistent with the State health plan *and* the standards for review established by the Commission. [Emphasis added.]

The SHP provides a formula for estimating the future utilization of adult (age 15 and above) cardiac surgery procedures. The projections are made two calendar years into the future from the time a CON review takes place. Under the formula the most recent national use rates as issued by the National Center for Health Statistics are multiplied by the projected population of the health service area as reported by the Department of State Planning. The existing total CS capacity of the area is then subtracted from the total number of procedures estimated to be required two years into the future to determine whether additional services are needed. Before the Commission can certify a new program to fill the future need, it must also find that at least 350 CS procedures per year are performed in each existing program. At the time of the CON review for Sinai and North Charles, Johns Hopkins was performing 780 procedures per year, the University of Maryland was performing 527 procedures, and under the SHP methodology St. Joseph was performing 350. The result of the formula calculations was that 420 additional procedures would be required in 1986. Under the SHP the Commission may grant only one CON at a time for open heart surgery, in order to allow the new program to develop without competition until it reaches 350 procedures per year.

It is to be noted that the SHP employs as the use factor in the cardiac surgery need formula a national rate as opposed to the historic rate for Central Maryland. The 1983–88 SHP, which was in effect as of September 10, 1984, was the first SHP to employ a national use factor for CS need projections. As explained by the Commission in the present case the national rate was chosen over the local rate because the latter " 'was felt [to] have been constrained.' The basis for this feeling [was] reports of unacceptable waiting times."

Code § 19–118(c)(1) also requires a decision on a CON application to be consistent with "the standards for review established by the Commission." These are set forth in

Reg. 07. Reg. 07D, entitled "Criteria for Review of Application," provides in relevant part that

(1) [i]n proceedings on a Certificate of Need application, the burden of proof that the project meets the applicable criteria for review rests with the applicant.

(2) ... the review shall include consideration of the following criteria:

. . . .

(c) The need for the proposed health services of the population served or to be served, including an analysis of *present* and future *utilization....* [Emphasis added.]

In considering "present ... utilization" in this case the Commission found that "current waiting times are reasonable when considered in light of the standard in the SHP. No additional need is currently shown when considering waiting times." The standard referred to by the Commission is thirty days from registration to surgery. The standard is based on a policy decision made by the Commission in the SHP and set forth in CS Standard 6, headed "Accessibility," which reads as follows:

The maximum waiting time for elective cardiac catheterization or cardiac surgery services should not exceed one month from the date of registration. Facilities seeking to expand or establish cardiac catheterization or cardiac surgery capacity on the basis of waiting times must demonstrate that the standard has been exceeded, on average, for at least 6 consecutive months. In no case can the waiting time standard serve as justification for additional cardiac surgery or catheterization capacity in the absence of need for such capacity as based on the need methodology contained in this Plan.

This standard does not exclusively discuss "Accessibility." The second sentence of the standard recognizes that extended waiting times are relevant to the issue of additional capacity. Consequently in applying Reg. 07D(2)(c), the Commission appropriately considered waiting times in ana-

lyzing present utilization. The Commission found that waiting times did not exceed thirty days and concluded that there was no present need. This conclusion supports the Commission's order and the affirmance thereof by the circuit court.[3]

In a nutshell the present case is one in which the Commission could have ruled as it did or it could have determined that there was a need for an additional CS program. It is the function of the Commission to decide whether or not a CON should be granted where, as here, there is substantial evidence to support either conclusion. We recently said in *Baltimore Lutheran High School Association v. Employment Security Administration*, 302 Md. 649, 661, 490 A.2d 701, 708 (1985) that "[t]he substantiality of the evidence is the common denominator of the scope of judicial review with respect to all administrative agencies." Quoting from *State Insurance Commissioner v. National Bureau of Casualty Underwriters*, 248 Md. 292, 309–10, 236 A.2d 282, 291–92 (1967) we summed up the rule this way:

"Whichever of the recognized tests the court uses—substantiality of the evidence on the record as a whole, clearly erroneous, fairly debatable or against the weight or preponderance of the evidence on the entire record—its appraisal or evaluation must be of the agency's fact-finding results and not an independent original estimate of or decision on the evidence. The required process is difficult to precisely articulate but it is plain that it requires restrained and disciplined judicial judgment so as not to interfere with the agency's factual conclusions under any of the tests, all of which are similar. There are differences but they are slight and under any of the standards the judicial review essentially should be limited to whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. This need not and

---

**3.** Consequently we have no occasion to address whether the Commission legally could have independently supported its order by its finding that CS Standard 6 had not been met.

must not be either judicial fact-finding or a substitution of judicial judgment for agency judgment." [302 Md. at 661–62, 490 A.2d at 708.]

Sinai and North Charles, however, argue that the Commission made an error of law. Appellants submit that the SHP determination of need is paramount because the legislative intent is that policy as established by the SHP controls in the grant or denial of a CON. But the comprehensive health planning statutes specify in § 19–118(c)(1) that decisions on CON applications must be consistent both with the SHP and with the standards for review which the Commission established in Reg. 07. Under the statute neither the SHP nor Reg. 07 predominates.

The principal thrust of the appellants' argument is premised on the existence of a conflict between the need projection developed under the SHP formula and the Commission's fact-finding that there is no present need. That perceived conflict leads appellants to urge us to apply a variety of statutory construction rules. We do not reach those rules because there is no conflict. The SHP deals with future need. It deals with projected need two years from the time a CON application is reviewed. Reg. 07D(2)(c) looks to available data reflecting actual utilization. The SHP neither provides a methodology for computing current need nor prohibits the Commission from establishing current need as one of the standards of review.[4] The Commission's denial of the CON applications, therefore, was consistent with the SHP.

Sinai also relies on two out-of-state cases. In *Statewide Health Coordinating Council v. General Hospitals of Humana, Inc.*, 280 Ark. 443, 660 S.W.2d 906 (1983), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2386, 81 L.Ed.2d 344 (1984), the Supreme Court of Arkansas reversed a circuit court's

---

**4.** We reject the notion that a "standard" for review as used in § 19–118(c)(1) refers to a standard such as CS Standard 6 found in the SHP but not to the criteria in Reg. 07. Such an interpretation makes § 19–118(c)(1) redundant.

affirmance of a CON award. The Arkansas state health plan mandated that there should be no more than four nonfederal short-stay hospital beds per 1,000 persons in a health service area. In 1982 Humana applied to build a 150-bed hospital in an area which was overbedded. The CON was issued based on testimony that by 1986 there would be no overage even with the 150 additional beds. That issuance was held to be inconsistent with the plan. In *Princeton Community Hospital v. State Health Planning and Development Agency*, 328 S.E.2d 164 (W.Va.1985), two hospitals in 1982 had separately applied for CONs for additional acute care beds. Because the requests were potentially duplicative the agency conducted a comparative review after which it denied both applications. A circuit court ordered both CONs to be issued but the West Virginia Supreme Court reversed. The plan provided a bed-need formula establishing the area's minimum and maximum projected bed supply levels by 1986 which the two applications, taken jointly or individually, exceeded. Although the applicants had been able to show some need, inconsistency with the plan prevented issuing a CON.

The result in *Humana* cuts against Sinai's position. In *Humana*, just as in the instant case, evidence of future need will not necessarily overcome the lack of evidence of present need. *Princeton* is not factually analogous.

There was substantial evidence to support the Commission's finding that there was no present need for additional CS capacity. Dr. Robert Brawley, Chief of Cardiac Surgery at St. Joseph Hospital, stated that there was no waiting list for open heart surgery at St. Joseph and that he understood waiting times at Johns Hopkins Hospital and the University of Maryland Hospital had become shorter. In his opinion there was no need for an additional program. According to Dr. Bruce Reitz, Director of Cardiac Surgery at Johns Hopkins, overall waiting time for elective cardiac surgery at Johns Hopkins was three to four weeks. Chief of Cardiology at Sinai, Dr. Phillip Reid, stated that his most recent experience revealed that the waiting time at Johns Hopkins

was two to four weeks. Finally, in a letter dated June 1, 1984, to Dr. Robert Mahon, Vice President of Medical Affairs at St. Joseph Hospital, Morton Rapoport, Chief Executive Officer of the University of Maryland Hospital, stated that in the first five months of 1984 there was a 17% reduction in caseload from the same period in 1983. University of Maryland could accommodate referrals within one week. Mr. Rapoport also stated that cardiac surgery in the United States had dropped by 25% overall, and in some areas by 40%. He listed as possible reasons for this decline:

1. The economic climate.

2. Indications from the CASS study that 25% of patients can be treated safely medically.

3. The more frequent use of balloon angioplasty.

4. The availability of newer drugs introduced in the last few years.

Indeed, the Commission found that waiting times were not only reasonable but that they were declining. This was also based on substantial evidence. Dr. Brawley attributed the declining waiting times at St. Joseph to an increase in the number of cardiac surgery procedures permitted by the overall decline in the occupancy rate of the hospital. Dr. Reitz testified that at Johns Hopkins waiting times had decreased while the number of procedures had increased as a result of providing more efficient services.

The Commission in addition found that without being required to obtain a CON the existing programs could, and were willing to, expand to the extent of providing 220 of the 420 future needed procedures, leaving a net 1986 need of 200 procedures. The appellants also represented that within only three months of approval each could be operating its proposed CS program. The Commission reasoned in part that since a new cardiac surgery program could be initiated quickly should there be evidence of a then present need for additional open heart surgery capacity in 1986, such capacity could be added at that time.

A reasonable mind could have reached the conclusion that there was no current need for an additional cardiac surgery program and that the applications of Sinai and North Charles, therefore, were both inconsistent with Reg. 07D(2)(c) and, ultimately, § 19–118(c)(1).[5]

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE EQUALLY DIVIDED BETWEEN THE APPELLANTS.

---

**5.** Appellee St. Joseph submitted an alternative argument that the circuit court's judgment was to be affirmed in any event because the Commission had found that both Sinai and North Charles failed to meet applicable criteria other than present need. Our review indicates that each of those issues, despite the labels of the criteria involved, was decided adversely to one or both of the appellants based on the Commission's finding of no present need. Had the appellants been successful in obtaining a reversal of that finding, we would have been obliged to remand to the Commission for its reconsideration of those other criteria in the light of this Court's opinion. Hence, while the appellants have limited the issues raised on appeal to the finding of no present need that issue is justiciable.