933 A.2d 512

**DEPARTMENT OF HEALTH AND MENTAL HYGIENE,
Office of Health Care Quality**

v.

**VNA HOSPICE OF MARYLAND.**

**No. 526 Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Sept. 28, 2007.

476

Kathleen A. Ellis (David Wagner, J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellant.

Stephen J. Sfekas, Baltimore, for Appellee.

Panel: KRAUSER, BARBERA, and CHARLES E. MOYLAN, JR. (Retired, specially assigned), JJ.

BARBERA, Judge.

We consider in this appeal the constitutionality of the law presently codified at Maryland Code (1982, 2005 Repl.Vol.), § 19–906 of the Health General Article ("HG"). That section sets forth the requirements for obtaining a license to provide home-based hospice services. Before 2003, VNA Hospice of Maryland ("VNA"), appellee, held a statewide license pursuant to the then-applicable version of HG § 19–906, to provide home-based hospice care service in Maryland. In 2003, the General Assembly substantially amended HG § 19–906, causing appellant, the Department of Health and Mental Hygiene ("the Department"), to amend VNA's license so that it could

no longer provide hospice services in Carroll and Prince George's counties. VNA appealed the alteration of its license, challenging the constitutionality of the 2003 amendments.

Following a hearing on the matter, an Administrative Law Judge ("ALJ") issued a Proposed Decision upholding the amendments. VNA filed exceptions, and the designee of the Secretary of the Department issued a Final Decision adopting the proposed findings of fact and conclusions of law set forth in the ALJ's Proposed Decision. The Board of Review of the Department affirmed the decision of the Secretary's designee.

VNA filed a Petition for Judicial Review in the Circuit Court for Baltimore County. The court issued an opinion reversing the Department's decision. The court ruled that the license issued to VNA in 1982 was a vested property right afforded constitutional protection under Article 24 of the Maryland Declaration of Rights. Alternatively, the court ruled that HG § 19–906(c)(3), which restricts the licenses for home-based hospice providers to only those jurisdictions in which the providers had administered services within the 12–month period ending on December 31, 2001, was arbitrary. Finally, the court ruled that the State's failure to provide, or offer to provide, any financial compensation to VNA as a result of the amendment of VNA's license constituted a "taking" in violation of Article III, § 40, of the Maryland Constitution. The Department noted a timely appeal to this Court.

For the reasons that follow, we conclude that HG § 19–906(c)(3) is not unconstitutional on any of the grounds asserted by VNA. We therefore reverse the judgment of the circuit court with the direction that it affirm the Final Decision of the Department.

## BACKGROUND

VNA offers home-based hospice and health care services in Maryland.[1] Since 1982, hospice care providers have been

---

1. "Home-based hospice services" are not defined in the Code; however, they are defined in COMAR 10.02.21.02(B)(6) as "hospice care

included within the definition of "health care facility" under Title 19 of the Health–General Article. *See* HG § 19–114(d)(vii).

As health care facilities, hospice care providers are required to obtain a Certificate of Need ("CON"), issued by the Maryland Health Care Commission, before developing or operating a hospice care facility or participating in hospice care. HG § 19–120(e). A CON refers to a certification or finding of public need for a particular health care project. HG § 19–114(c). In Maryland, providers of hospice services must apply for a CON prior to developing, operating, or participating in these health care programs. *See* HG § 19 –120(e). The general purpose of a CON is to ensure that new health care services and facilities are developed only as needed, based on the publicly developed measures of cost effectiveness, quality of care, and geographic and financial access to care.

By 1987 Md. Laws, ch. 670, the General Assembly amended HG § 19–906, entitled "Qualifications for License," to require home-based hospice care providers to obtain a license under that provision. The law also required that such programs obtain a CON. An uncodified section of the 1987 law, *see* 1987 Md. Laws, ch. 670, § 2, provided that hospice care programs in existence and delivering hospice care services before January 1, 1987, were exempt from the CON requirement.

Because VNA was in existence and delivering hospice care services before January 1, 1987, it was exempt from the CON requirement that was added to the law in that year. Before enactment of the 2003 amendments to HG § 19–906, VNA was

---

services provided to a patient in the patient's permanent or temporary residence." A "general hospice care program" is a

coordinated, interdisciplinary program of hospice care services for meeting the special physical, psychological, spiritual, and social needs of dying individuals and their families, by providing palliative and supportive medical, nursing, and other health services through home or inpatient care during the illness and bereavement: (1) to individuals who have no reasonable prospect of cure as estimated by a physician; and (2) to the families of those individuals.

HG § 19–901(d).

licensed to provide home-based hospice care services and provided such services in Baltimore City and Anne Arundel, Baltimore, Cecil, Carroll, Harford, Howard, and Prince George's counties.

In 2003, the General Assembly again amended HG § 19–906, by passing SB 732. *See* 2003 Md. Laws, ch. 404. As a result of those amendments, HG § 19–906(c) provides, in relevant part:

(2) The Secretary, in consultation with the Maryland Health Care Commission, shall specify those jurisdictions in which a general hospice is authorized to provide home-based hospice services.

(3) A general hospice may not be licensed to provide home-based hospice services in a jurisdiction unless the general hospice or an entity acquired by the general hospice provided home-based hospice services to a patient in the jurisdiction during the 12–month period ending December 31, 2001.

\* \* \*

(5) Upon the notification by the Maryland Health Care Commission of the issuance of a certificate of need to a general hospice, the Secretary shall append to the general hospice license any additional jurisdictions in which the general hospice may provide home-based hospice services.

Pursuant to the 2003 amendments, the Secretary of the Maryland Health Care Commission is required to specify the jurisdictions or counties in which a general hospice is authorized to provide home-based hospice services. A general hospice may enlarge its license to include additional jurisdictions by applying for a CON. General hospices are exempt from the CON requirement, however, if they provided hospice care services in a jurisdiction within the 12–month period ending on December 31, 2001.

Following the enactment of the 2003 amendments to HG § 19–906, the Department of Health and Mental Hygiene Office of Health Care Quality ("OHCQ"), which issues licenses for hospice services in Maryland, reviewed a 2001 survey

conducted by the Hospice Network of Maryland, Inc. OHCQ determined that VNA had not provided hospice care services in Carroll and Prince George's counties during the 2001 calendar year.

By letter dated August 18, 2003, OHCQ notified VNA that, pursuant to the 2003 amendments to HG § 19–906, its license was amended to limit its operations to the six jurisdictions in which it h ad served home-based hospice patients in 2001: Baltimore City and Anne Arundel, Baltimore, Cecil, Harford, and Howard counties. Under the amended license, VNA could not provide services in Carroll and Prince George's counties, unless it obtained a CON and became licensed to provide service in those counties.

VNA appealed the alteration of its license to the Office of Administrative Hearings. A hearing on VNA's appeal was conducted before an ALJ. VNA argued, *inter alia*,[2] that the 2003 amendments to HG § 19–906 violated both the Maryland Declaration of Rights and the United States Constitution. VNA maintained that the 2003 amendments operated retroactively to abrogate its existing property right to provide hospice care services in Carroll and Prince George's counties.

The ALJ rendered a Proposed Decision declining to hold the 2003 amendments to HG § 19–906 unconstitutional as applied to VNA. The ALJ concluded that VNA did not have a vested property right in providing home-based hospice services. The ALJ therefore concluded that the 2003 amendments to HG § 19–906 did not deprive VNA of its due process rights under Article 24 of the Maryland Declaration of Rights or the Fourteenth Amendment to the Constitution of the United States. The ALJ also concluded that the 2003 amendments did not constitute a taking under Article III, § 40 of the Maryland Constitution or the Fifth Amendment (as incorporated through the due process clause of the Fourteenth Amendment), and those amendments did not create a monopo-

---

2. VNA also argued that it had provided services in Prince George's and Carroll counties in 2001. VNA does not raise that argument on appeal.

ly in violation of Article 41 of the Maryland Declaration of Rights.

VNA filed exceptions to the Proposed Decision, and the designee of the Secretary of the Department held a hearing, at which the Secretary's designee heard argument of counsel. She later issued a Final Decision adopting the proposed findings of fact and conclusions of law set forth in the Proposed Decision and "upholding the Office of Health Care Quality's action to amend VNA's hospice care license to exclude VNA from providing home-based hospice services in Carroll and Prince George's counties pursuant to HG § 19–906(c)(3)."

VNA appealed the decision to the Department's Board of Review ("Board"). At the hearing before the Board, VNA argued, as it had before the ALJ, that the 2003 amendments to HG § 19–906(c)(3) retroactively divested VNA of its right to a license to provide hospice services in Carroll and Prince George's counties. The Board of Review disagreed and affirmed the Final Decision.

VNA filed a Petition for Judicial Review in the Circuit Court for Baltimore County. Following a hearing, the court issued an opinion reversing the decision adopted by the Board of Review. The court ruled that VNA had a vested property right in providing home-based hospice services that was abrogated by the 2003 amendments. The court further ruled that the provision of HG § 19–906 exempting from the CON requirement only general hospices that provided services in a jurisdiction in 2001 is arbitrary and unconstitutional under Article 24 of the Maryland Declaration of Rights and an improper exercise of the State's police powers. The court did not reach the remaining claims. The Department timely appealed.

## THE PARTIES' CONTENTIONS

The Department contends that the Final Decision is proper because VNA did not establish that HG § 19–906, as amended in 2003, is unconstitutional on any of the grounds that VNA

asserted. The Department therefore asks us to reverse the decision of the circuit court and affirm the decision of the Department. The Department argues that VNA has no property interest in continuing to provide hospice services in Carroll and Prince George's counties; therefore, the 2003 amendments do not deprive VNA of a vested property right in violation of due process under either Article 24 of the Maryland Declaration of Rights or the Fourteenth Amendment to the Constitution. For the same reason, the Department argues that the 2003 amendments also do not offend the prohibition in the Fifth Amendment and Article III, § 40 of the Maryland Constitution against a taking without just compensation. The Department also argues that the 2003 changes to the law do not constitute an improper exercise of the State's police power, and they do not create a monopoly prohibited by Article 41 of the Maryland Declaration of Rights.

VNA disagrees with each of the Department's contentions. VNA reasserts all of the state and Federal constitutional arguments that it raised at the administrative level and before the circuit court.

## STANDARD OF REVIEW

"In reviewing the decision of an administrative agency, this Court performs the same function as the circuit court." *Bd. of License Comm'rs for Prince George's County v. Global Express Money Orders, Inc.*, 168 Md.App. 339, 344, 896 A.2d 432 (2006). "We review the decision of the agency, not that of the circuit court." *Id.*

When reviewing an administrative agency decision, the court's task "is *not* to substitute its judgment for the expertise of those persons who constitute the administrative agency[.]" *United Parcel Serv., Inc. v. People's Counsel for Balt. County*, 336 Md. 569, 576–77, 650 A.2d 226 (1994) (citation and internal quotation marks omitted). "Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency." *Md. Aviation Admin. v. Noland*, 386 Md. 556, 572, 873 A.2d 1145

(2005). When, as in this case, the issue decided by the administrative agency involves pure questions of law, we review the issue *de novo* to determine if the agency's decision "is premised upon an erroneous conclusion of law." *See id.* at 571, 873 A.2d 1145; *Md. Bd. of Physicians v. Elliott,* 170 Md.App. 369, 425, 907 A.2d 321 (2006).

## DISCUSSION

Before we address the specific arguments presented by the parties, we review in somewhat greater detail than at the outset of this opinion the statutory context of HG § 19–906. HG § 19–906 is part of what has been termed a "comprehensive health care statutory framework." *Catonsville Nursing Home, Inc. v. Loveman,* 349 Md. 560, 573, 709 A.2d 749 (1998). That statutory framework is highly regulated. *See* HG § 19–102(a) ("The General Assembly finds that the health care regulatory system in this State is a highly complex structure that needs to be constantly reevaluated and modified in order to better reflect and be more responsive to the ever changing health care environment and the needs of the citizens of this State"). HG § 19–906, including the 2003 amendments that added subsections (c)(2) through (c)(5), must be viewed together with other provisions of the Health Care Facilities Subtitle, particularly the provisions that address CONs.

CONs give effect to the priority in Maryland " 'to promote the development of a health care system that provides, for all citizens, financial and geographic access to quality health care at a reasonable cost.' " *Sinai Hosp. of Balt., Inc. v. Md. Health Res. Planning Comm'n,* 306 Md. 472, 473, 509 A.2d 1202 (1986) (quoting HG § 19–102). The Court of Appeals traced the origins of Maryland's CON requirement in *Loveman,* 349 Md. at 572–75, 709 A.2d 749. CONs are a product of the National Health Planning and Resources Development Act of 1974, codified at 42 U.S.C. § 300k–300n–6 (1982) ("Federal Act"). *See Loveman,* 349 Md. at 572, 709 A.2d 749. The Federal Act, "an attempt to curb the rising costs of health care across the country,"

provided substantial federal funding conditioned on a state's enactment of certain health care planning laws.... [T]he Federal Act required states to implement a state health plan (SHP) and administer a CON program for "new institutional health services proposed to be offered or developed within the State." The purpose of the CON requirement was to add "teeth" to the Federal Act and to help Congress achieve its goals of limiting skyrocketing health care costs, preventing unnecessary duplication of health facilities and resources, and fostering equal access to quality health care for a reasonable cost.

*Id.* (citations omitted).

Congress repealed the CON requirements in 1986, *see* Pub. L. No. 99–600 § 701, 100 Stat. 3743, 3799 (1986), evidently because the requirements were "counterproductive for reforming health care." *Id.* (citation and internal quotation marks omitted). Nevertheless, Maryland, among many other states, retained its CON laws. *Id.*

In 1975, the Maryland General Assembly authorized the Governor to implement provisions of the Federal Act. *Id.* at 573, 709 A.2d 749. Then, in 1978, the General Assembly, "finding that it was a priority of the State to assure equal financial and geographic access to quality health care for all citizens at a reasonable cost, created the Maryland Health Planning and Development Agency and the Maryland Health Resources Planning Commission [now, the Maryland Health Care Commission] to carry out the federal and state legislation." *Id.* at 573, 709 A.2d 749 (citing 1978 Md. Laws, ch. 911). Chapter 911 codified Maryland's Health Planning and Development Act and implemented the laws and procedures for obtaining a CON.

The Maryland Health Care Commission ("Commission") is an independent commission that functions within the Department of Health and Mental Hygiene. HG § 19–103. The Commission is authorized by HG § 19–115 to promulgate rules and regulations concerning issuance of CONs in a manner that "ensure[s] that changes in service capacity and major

expenditures for health care facilities are needed and affordable, and consistent with the Commission's policies." *See Sinai Hosp.*, 306 Md. at 474, 509 A.2d 1202 (citation and internal quotation marks omitted).

Before a person can develop, operate, or participate in certain health care projects, the Commission must issue a CON. HG § 19–115. The CON requirement serves " 'to assure an efficient and effective health care system for Maryland.' " *Loveman*, 349 Md. at 575, 709 A.2d 749 (citation and internal quotation marks omitted).

At the same time that the General Assembly enacted the CON requirements in 1978, it provided that the requirement of a CON "does not apply to a health care project which: (I) was not subject to Certificate of Conformance Review as required by Chapter 222 of the Acts of 1968; and (II) was completed and in operation on or before June 1, 1978." 1978 Md. Laws, ch. 911. The *Loveman* Court determined that even though the word "exempt" was not used in that provision of the law, "the effect of [it] was to 'exempt' those facilities from the requirement to obtain a CON." 349 Md. at 575, 709 A.2d 749. The *Loveman* Court concluded that the exemption from the obligation of obtaining a CON was a privilege, "personal to the person or entity exempted." *Id.* at 577, 709 A.2d 749. The Court noted that such exemptions "must b e narrowly construed." *Id.* at 578, 709 A.2d 749. The Court disagreed with Loveman that there existed in the grant of the CON exemption a broad right to retain the exemption, as if it were "created to run with the land much like a zoning nonconforming use provision." *Id.* at 580, 709 A.2d 749. The Court said in that regard:

> The Health Planning and Development Act is a regulatory scheme. The General Assembly gave the Commission the power to regulate the placement of health care projects, the types of services offered, and the number of persons to be served in an attempt to reduce the number of unused or unuseful projects throughout the State. Accordingly, this statute is regulatory in nature in terms of the distribution of

health care services and does not, nor was it intended to, confer any specific real property rights.

Moreover, if [Loveman's] interest in the health care project was a property right, it was, at best, an incorporeal hereditament.

*Id.*

We have said that, by 1987 Md. Laws, ch. 670, the General Assembly amended HG § 19–906 to require home-based hospice care providers to obtain a license under Subtitle 9 of Title 19. The 1987 amendment also required that such programs obtain a CON. An uncodified section of the 1987 law provided that hospice care programs in existence and delivering hospice care services before January 1, 1987, were exempt from the CON requirement. The uncodified section of the enactment provided that

those hospice care programs in existence and delivering hospice care services before January 1, 1987, that request licensure between July 1, 1987 and July 1, 1998, shall not be required to obtain a certificate of need prior to licensure. However, those hospice care programs seeking exemption from formal submission of a certificate of need for a hospice care program under this section shall meet the criteria established by the Maryland Health Resources Planning Commission in consultation with interested groups, including the Hospice Network of Maryland, Inc., for determining whether a hospice care program was in existence and delivering hospice care services before January 1, 1987.

*See* 1987 Md. Laws, ch. 670, § 2.

Therefore, the uncodified provision of the 1987 law, like the similar provision of the 1978 law, created an exemption from the requirement of a CON for hospice care programs already in existence and requesting licensure within the period designated by the law. By application of the reasoning the *Loveman* Court employed, the exemption created by the 1987 law is a privilege, not a real property right, and "if" a property right at all, it is, "at best, an incorporeal hereditament" that

must be construed narrowly. *See* 349 Md. at 578, 580, 709 A.2d 749.

Pursuant to the exemption or "grandfather clause" in the 1987 law, some hospice programs acquired the authority to provide home-based hospice services throughout the State without ever having to obtain a CON for such services. Concern about the number of service providers being permitted to operate state-wide prompted the General Assembly to enact the changes to Subtitle 19 that have precipitated this litigation. Of particular relevance to the present case, the law now requires the Secretary of the Department, in consultation with the Commission, to specify the jurisdictions in which a general hospice is licensed to provide home-based hospice services. *See* HG § 19–906(c)(2). The law also limits the jurisdictions for which a general hospice can be licensed to provide home-based hospice services to those in which the program provided home-based services to a patient during calendar year 2001. *See* HG § 19–906(c)(3). A program is entitled to seek licensure to provide services in additional jurisdictions by applying for and receiving a CON. *See* HG § 19–906(c)(5).[3]

## *This Case*

At issue in the present case is the lawfulness of the Department's amendment of VNA's license, pursuant to the dictates of the 2003 amendments to HG § 19–906. The amendment of the license had the effect of reducing by two the number of jurisdictions in which VNA can provide home hospice services, in the absence of its first obtaining a CON to provide services in those jurisdictions. We already have identified the various constitutional arguments that VNA makes concerning those

---

**3.** The 2003 legislation also limits a successor organization to providing services in those geographic areas covered by the transferring entity. *See* HG § 19–120(k)(5). Moreover, the legislation added HG § 19–120(*o*), which prohibits the Commission, with respect to an acquisition, from authorizing a general hospice to provide services on a state-wide basis.

changes to the law and the Department's responses to each. We shall consider each contention, in turn.

*Do the 2003 amendments to HG § 19–906(c) constitute a retroactive abrogation of a vested right?*

■ It has been firmly settled by the opinions of the Court of Appeals "that the Constitution of Maryland prohibits legislation which retroactively abrogates vested rights. No matter how 'rational' under particular circumstances, the State is constitutionally precluded from abolishing a vested property right or taking one person's property and giving it to someone else." *Dua v. Comcast Cable of Md., Inc.,* 370 Md. 604, 623, 805 A.2d 1061 (2002). "[E]ven a remedial or procedural statute may not be applied retroactively if it will interfere with vested or substantive rights." *Id.* at 625, 805 A.2d 1061 (citations and internal quotation marks omitted). The concept of vested property rights, in connection with retroactive civil legislation, with some exceptions, "includes that which is regarded as a property right under Maryland property law." *Id.* at 631, 805 A.2d 1061. Under Maryland law, the meaning of "property" is "quite broad," and includes "real, personal, mixed, tangible or intangible property of every kind." *Id.* at 631 n. 10, 805 A.2d 1061 (quoting Md. Rule 1–202(v)).

VNA argues that its license to provide services in Carroll and Prince George's counties is a vested property right that was retroactively abrogated by the passage of the 2003 amendments. The Department responds that VNA's argument fails in its premise because a license to provide hospice services is not a vested property right.[4]

We have defined a vested right as

a right so fixed that it is not dependent on any future act, contingency or decision to make it more secure.... In other words, [t]o be vested, a right must be more that a mere expectation based on an anticipation of the continuance of

---

4. The Department does not argue that the 2003 amendments to HG § 19–906 have no retroactive application.

an existing law; it must have become a title, legal or equitable, to the present or future enforcement of a demand. *McComas v. Criminal Injuries Comp. Bd.*, 88 Md.App. 143, 149–50, 594 A.2d 583 (1991) (citations and internal quotation marks omitted); *see also Langston v. Riffe*, 359 Md. 396, 419–20, 754 A.2d 389 (2000) (summarizing various definitions of "vested right").

The appellate courts of this State have said on more than one occasion that a professional license, though having certain "property" rights, is not an absolute vested right, " 'but only a conditional right which is subordinate to the police power of the State to protect and preserve the public health.' " *Comm'n on Med. Discipline v. Stillman*, 291 Md. 390, 405, 435 A.2d 747 (1981) (quoting *Aitchison v. State*, 204 Md. 538, 105 A.2d 495, *cert. denied*, 348 U.S. 880, 75 S.Ct. 116, 99 L.Ed. 692 (1954)); *see also Landsman v. Md. Home Improvement Com'n*, 154 Md.App. 241, 259, 839 A.2d 743 (2003) (quoting *Dr. K. v. State Bd. Of Physician Quality Assurance*, 98 Md.App. 103, 120, 632 A.2d 453 (1993), *cert. denied*, 334 Md. 18, 637 A.2d 1191, *cert. denied*, 513 U.S. 817, 115 S.Ct. 75, 130 L.Ed.2d 29 (1994)).[5]

A number of our sister state courts have declared that a professional license or license to operate a business does not create a vested right. *See, e.g., O'Bar v. Town of Rainbow City*, 269 Ala. 247, 112 So.2d 790, 791–92 (1959) (holding that the appellant, who operated a night club and café, did not have vested right in her operating license; although the state could not revoke the license arbitrarily, it could revoke the license when substantial evidence supported the action); *In re Application of Herrick*, 82 Hawai'i 329, 922 P.2d 942, 951 (1996)

---

**5.** The Administrative Procedure Act defines "license" as "all or any part of permission that: (1) is required by law to be obtained from an agency; (2) is not required only for revenue purposes; and (3) is in any form, including: (i) an approval; (ii) a certificate; (iii) a charter; (iv) a permit; or (v) a registration." Md.Code (1984, 2004 Repl.Vol.), § 10–202(e) of the State Government Article. *See also* BLACK'S LAW DICTIONARY at 931 (7th ed. 1999) (defining a license as "[a] revocable permission to commit some act that would otherwise be unlawful").

(stating that a regulation did not constitute a "promise" that the temporary court-reporter certification would never be abolished, and observing that, "in granting a license, the state reserves the right to exercise its police powers and place additional regulatory burdens on license holders"); *O'Connor v. City of Moscow*, 69 Idaho 37, 202 P.2d 401, 405 (1949) (holding that a "license to operate a beer parlor or a billiard or a pool hall does not confer any vested right," but further stating that, if the local government "makes such businesses lawful by a permit or license, it cannot arbitrarily, capriciously, or unreasonably impair, interfere with, or eradicate the same"); *Latreille v. Mich. State Bd. of Chiropractic Exam'rs*, 357 Mich. 440, 98 N.W.2d 611, 614 (1959) (stating that a license to practice a profession creates no vested interest and that the license may be withdrawn for proper cause by the authority that granted it); *Hodes v. Axelrod*, 70 N.Y.2d 364, 520 N.Y.S.2d 933, 515 N.E.2d 612, 615–16 (1987) (holding that the application of an amended statute permitting the revocation of a nursing home operating certificate based on an operator's industry-related felony convictions does not impair the operator's vested rights, even though the operator had successfully litigated the automatic revocation under the preexisting law); *Coletti v. Dep't of State Police*, 64 Mass.App.Ct. 222, 832 N.E.2d 8, 11–12 (2005) (holding that, pursuant to a statute requiring the licensing of all private detectives and permitting the revocation of licenses "at any time for cause," the state may properly revoke a private detective's license for misconduct predating the license application); *Bourgeous v. State, Dep't of Commerce*, 41 P.3d 461, 465 (Utah Ct.App.2002) (stating that, because a license does not create a vested right, the legislature may impose new or additional burdens on the licensee, alter the license, or revoke it).

Other states characterize such licenses, once obtained, as a "vested property right" that cannot be impaired without affording the license-holder procedural due process. *See State v. Perez*, 276 Conn. 285, 885 A.2d 178, 186 (2005) (acknowledging a vested right in an attorney's license to practice law); *Derby Refining Co. v. Bd. of Aldermen of Chelsea*, 407 Mass.

718, 555 N.E.2d 584, 587 (1990) (stating that once a license has issued, it becomes the vested property right of the licensee, and revocation of the license must comport with due process protections); *Patterson v. Bd. of Pilot Comm'rs*, 30 Or. 301, 47 P. 786, 787 (1897) (stating, in a case concerning the non-renewal of a pilot's license, that, "after a license is once issued, a right to the renewal thereof becomes, under the statute, a vested and valuable right, of which the holder cannot be deprived without notice"); *James v. Bd. of Dental Examiners*, 172 Cal.App.3d 1096, 218 Cal.Rptr. 710, 716 (1985) (recognizing a vested right in professional licenses); *John v. Dep't of Professional Regulation*, 305 Ill.App.3d 964, 239 Ill.Dec. 142, 713 N.E.2d 673, 678 (1999) (finding no vested right in a nurse's license before fulfillment of a test requirement, but remarking that a vested right existed in examination attempts to fulfill that test requirement within the designated time frame); *see also Santa Ana Tustin Cmty. Hosp. v. Bd. of Supervisors of the County of Orange*, 127 Cal.App.3d 644, 179 Cal.Rptr. 620, 626 (1982) (recognizing the possibility that a licensee "may have a substantial vested property right in its hospital licenses.").[6]

■ The provision of home-based hospice services is subject to significant regulation as a component of the health care system in Maryland. Further, issuance of a license has long been contingent (excepting those entities that come within the statutory exemption) upon obtaining a CON, which is tied directly to the goal of delivering quality health care to citizens of all parts of the state. *Loveman*, 349 Md. at 573, 709 A.2d 749. We therefore conclude that, like other professional licenses, a license to deliver home-based hospice is not an

---

6. VNA directs us to cases that address jurisdictional limits on licensees to engage in common occupations or callings. *See Bruce v. Director, Dep't of Chesapeake Bay Affairs*, 261 Md. 585, 605, 276 A.2d 200 (1971); *Attorney General of Maryland v. Waldron*, 289 Md. 683, 714–20, 426 A.2d 929 (1981). We do not find those cases helpful to our vested rights analysis because they involve a state's reasonable exercise of police power over one's property right in one's common occupation, rather than a state's exercise of police power over "vested" property rights.

absolute vested right, "but only a conditional right which is subordinate to the police power of the State to protect and preserve the public health." *Stillman,* 291 Md. at 405, 435 A.2d 747 (citation and internal quotation marks omitted).[7] That VNA's license is not a vested property right does not mean, of course, that it is not subject to procedural due process before it can be revoked, suspended, or otherwise altered. *See id.* VNA makes no argument that it was denied procedural due process.

■ Because VNA did not have a vested property right in the license to provide home-based hospice services in Carroll and Prince George's counties, it follows that the 2003 amendments to HG § 19–906, which operated to amend VNA's license such that it could no longer provide services in those counties without first obtaining a CON, did not violate VNA's rights under Article 24 of the Maryland Declaration of Rights. For the same reason, the 2003 amendments do not constitute a "taking" under Article III, § 40 of the Maryland Constitution. *See Dua,* 370 Md. at 630, 630 n. 9, 805 A.2d 1061.

We have decided the above state constitutional issues as the parties have presented them. Indeed, the parties agree that those issues turn on whether VNA has a vested right in a license that would permit it to continue to provide home-based hospice services in Carroll and Prince George's counties. We

---

7. We are aware of the decision in *United States ex. rel. Joslin v. Cmty. Home Health of Md., Inc.,* 984 F.Supp. 374 (D.Md.1997), in which the court referred to the defendant's exemption from the CON process as a "vested right." Aside from the fact that decisions of the United States District Court are not controlling, the court's comment was dicta. Moreover, although the court referred to the license to operate home health care services as a vested property right, the focus of the *Joslin* decision did not rest on whether that right was vested. Rather, the court's attention centered on whether the General Assembly "intended to apply the repealer retroactively." *Id.* at 379. The court found "[t]he repealer evince[d] no such intention"; thus, although the CON exemption was repealed, the repeal did not affect the defendants' property rights. *Id.*

In any case, federal law differs from Maryland law in that a "vested right" may be divested by retroactive legislation if that divestment meets a due process rationality analysis. *Pension Benefit Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984).

note, however, that the Department might well have framed the issue as whether VNA has a vested right, not in the license itself, but in VNA's 1987 exemption from the requirement of securing a CON as a prerequisite to obtaining that license to provide state-wide home-based hospice services. *See* 1987 Md. Laws, ch. 670, § 2. Given the Court of Appeals' declaration in *Loveman* that a CON exemption is a privilege and that, "[t]o the extent that the exemption is related to *real property*, and we do not hold that it is, the exemption would remain a privilege, an incorporeal hereditament," 349 Md. at 577, 709 A.2d 749, VNA would be hard-pressed to argue that it has a "vested right" in that exemption.

We shall now turn to the remainder of the constitutional challenges to the 2003 amendments to HG § 19–906.[8]

*Do the 2003 amendments to HG § 19–906(c)*
*constitute a "taking" under the Fifth*
*Amendment's Takings Clause?*

VNA also challenges the constitutionality of HG § 19–906(c)(2) on the ground that the statute violates the takings clause of the Fifth Amendment.[9] VNA devotes only two paragraphs in its brief to the argument and cites *Eastern Enterprises v. Apfel*, 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998). In that case, a mere plurality of the Court found an unconstitutional taking in a monetary assessment imposed upon the prior owner of a coal mine under a provision of the Coal Industry Retiree Health Benefits Act of 1992.

The Department argues that VNA has provided no support for its assertion that the takings clause applies to the revoca-

---

8. We have mentioned that the circuit court did not reach VNA's arguments under the federal Constitution, because it ruled that the 2003 changes to HG § 19–906 violated the state Constitution. In the interest of judicial economy, we shall address the federal constitutional arguments.

9. The takings clause of the Fifth Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Mercantile–Safe Deposit and Trust Co. v. Mayor and City Council of Balt.*, 308 Md. 627, 521 A.2d 734 (1987).

tion of professional licenses. The Department contends that federal case law rejects the application of the takings clause to licenses and permits. The Department cites two federal decisions in support, *Conti v. United States*, 291 F.3d 1334, 1340 (Fed.Cir.2002) (concluding that a swordfishing permit did not confer a property interest for purposes of the takings clause), *cert. denied*, 537 U.S. 1112, 123 S.Ct. 904, 154 L.Ed.2d 785 (2003) and *Am. Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363 (Fed.Cir.2004) (holding that the petitioner did not and could not possess a property interest in its fishery permits), *cert. denied*, 545 U.S. 1139, 125 S.Ct. 2963, 162 L.Ed.2d 887 (2005).

■ VNA has not provided us with any authority from the Supreme Court or lower federal courts that suggests, much less holds, that alteration or revocation of a license to provide a health care services amounts to a taking of "property," as that term is used in "takings" jurisprudence. Indeed, the decisions suggest the contrary. *See, e.g., Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) ("A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government, than when interference arises from some public program adjusting benefits and burdens of economic life to promote the common good.") (internal citation omitted).

We already have concluded that VNA did not have an absolute vested right in retaining the license to provide home-based hospice services in Carroll and Prince George's counties. We further conclude that the amendment of the license that resulted from the 2003 changes to HG § 19–906(c) did not amount to a taking of "property" without compensation, in violation of the Fifth Amendment.

*Do the 2003 amendments to HG § 19–906(c) violate the Due Process Clause of the Fourteenth Amendment?*

VNA understandably devotes little space in its brief to the argument that the 2003 amendments violate the due process

clause of the Fourteenth Amendment. Under the federal constitutional standard, the burden of satisfying due process "is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose." *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 730, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984). The obvious legislative purpose of limiting the activities and expansion of CON-exempt hospice providers satisfies the "rationality" test.

*Do the 2003 amendments create a monopoly in violation of Article 41 of the Maryland Declaration of Rights?*

VNA further contends that HG § 19–906(c)(2) is unconstitutional under Article 41 of the Maryland Declaration of Rights, because that subsection unconstitutionally grants to existing hospice care providers in Carroll and Prince George's counties an "exclusive franchise" to provide hospice care.

The Department responds that Article 41 does not apply to regulations enacted to protect the public. It contends that anti-competitive regulatory schemes are "immunized from antitrust scrutiny" and are *"ipso facto* ... exempt from the operation of antitrust laws." The State's hospice regulatory system, the Department argues, does not establish an unconstitutional monopoly; rather, the system reasonably regulates hospice services as required to protect the public interest.

We begin our answer to this contention with the proposition that "[a] grant of privileges, even though monopolistic in character, does not constitute a monopoly in the constitutional sense when reasonably required for protection of some public interest, or when given in return for some public service, or when given in reference to some matter not of common right." *Levin v. Sinai Hosp. of Balt. City, Inc.*, 186 Md. 174, 183, 46 A.2d 298 (1946); *see also Raney v. County Comm'rs of Montgomery County*, 170 Md. 183, 193, 183 A. 548 (1936). The Court of Appeals stated in *Raney:*

There is, therefore, this relation between a special privilege monopolistic in character and the police power of the state,

that when the creation or grant of such a privilege is needed to aid some governmental function or purpose essential to the protection of the public security, health, or morals, it may not be obnoxious to the constitutional condemnation of monopolies.

*Id.*

In *Raney,* the Court examined the constitutionality of a Montgomery County act that required the County, when publishing certain public notices, to print the notices in two Montgomery county newspapers of general circulation that met specific criteria. *Id.* at 186, 183 A. 548. Specifically, the act required the newspapers to be printed in Montgomery County and to have been in service for four consecutive years prior to the publication of the notices. *Id.* Only one newspaper in Montgomery County met the requirements. *Id.* at 190, 183 A. 548. Examining the act in light of Article 41 of the Maryland Declaration of Rights, the Court concluded that the act essentially conferred on that single paper a special privilege for which no other paper was eligible to compete. *Id.* Reasoning that the location of a newspaper's printing and its length of service were not relevant to its effectiveness in publishing public notices, the Court ruled that the act created an unconstitutional monopoly depriving the persons excluded from the equal protection of the law. *Id.* at 196–97, 183 A. 548.

VNA relies on *Raney* to argue that, like the act at issue in that case, HG § 19–906(c)(2) violates the prohibition against monopolies established in Article 41 by restricting to a "class" of providers the right to provide hospice care services in Carroll and Prince George's counties. *Id.* at 190, 183 A. 548. Acknowledging that HG § 19–906(c)(2) does not create a monopoly in a single provider, it contends that the bill grants to certain hospice care providers an exclusive privilege on arbitrary grounds. We disagree.

HG § 19–906(c)(2) does not make ineligible all but one or a small class of hospice services in Carroll or Prince George's counties. Rather, that subsection limits the exemp-

tion of a CON to the home-based hospice care providers that provided service in those counties in 2001. The ALJ's Proposed Decision notes that when the General Assembly was considering the adoption of HG § 19–906(c)(2), it had before it evidence that seven hospice care providers rendered home-based services in Prince George's County in 2001, and four hospice care providers rendered home-based services in Carroll County in 2001.

Because VNA did not render hospice care services in Carroll or Prince George's counties in 2001, it is required to obtain a CON to provide hospice services in those counties. Providers that rendered service in those counties in 2001 do not face the same requirement. Despite the distinction in the CON requirement, we do not conclude that the "privilege" not to obtain a CON, conferred upon the hospice providers that were servicing Carroll and Prince George's counties in 2001, creates an unconstitutional monopoly. Rather, the distinction is "reasonably required for protection of some public interest," *see Levin,* 186 Md. at 183, 46 A.2d 298, namely, ensuring that new health care services and facilities are developed only as needed, as measured by their cost effectiveness, quality, and geographical location.

The other cases upon which VNA relies, *Mayor and City Council of Havre de Grace v. Johnson,* 143 Md. 601, 123 A. 65 (1923) and *State v. Mercer,* 132 Md. 263, 103 A. 570 (1918), involve discriminatory classifications based entirely on a company's residency. Those cases do not assist the analysis. HG § 19–906(c)(2) does not afford hospice providers from one county an advantage over out-of-county hospices; rather, it grants the hospice providers that were providing services in Prince George's and Carroll counties the privilege of maintaining their licenses in those counties, regardless of residency.

### *Are the 2003 amendments to HG § 19–906 an improper exercise of the State's Police Power?*

VNA argues that the General Assembly's enactment of HG § 19–906(c)(2) was arbitrary and capricious and, thus, consti-

tutes an invalid exercise of the State's police power. VNA sets forth three reasons to support this contention: First, the enactment caused VNA to lose its hospice care license even though it provided hospice services in Carroll and Prince George's counties both before and after the enactment. Second, the revocation of its license is not due to any misconduct, negligence, fraud, or any other dereliction on its part. Third, the statute's use of the twelve-month period ending with December 31, 2001, for "grandfathering" purposes, is not based on rational criteria.

The Department responds that HG § 19–906(c)(2) is not an arbitrary or capricious exercise of legislative power under the State's police power. It contends that the General Assembly purposefully based the exemption for the CON requirement on calendar year 2001 because, at the time the legislature was considering the enactment of § 19–906(c)(2), that was the most recent year for which there was available data. The Department writes: "The General Assembly sought to advance its interest in improved planning for home-based hospice service ... [by] establish[ing] an inventory of home-based hospice services based on the best data then available—the 2001 annual hospice survey."

A state's police power is its power to take action that will protect the public health, morals, safety, and welfare of its citizens. *See Dawson v. State,* 329 Md. 275, 283, 619 A.2d 111 (1993); *Raynor v. Md. Dep't of Health and Mental Hygiene,* 110 Md.App. 165, 178, 676 A.2d 978 (1996). In *Dawson,* the Court of Appeals wrote:

> "The exercise by the Legislature of the police power will not be interfered with unless it is shown to be exercised arbitrarily, oppressively or unreasonably. The wisdom or expediency of a law adopted in the exercise of the police power of a state is not subject to judicial review, and the law will not be held void if there are any considerations relating to the public welfare by which it can be supported. Such a statute carries with it a strong presumption of constitutionality."

329 Md. at 283–84, 619 A.2d 111 (quoting *Bowie Inn, Inc. v. City of Bowie,* 274 Md. 230, 236, 335 A.2d 679 (1975)).

 "A statute enacted by the Legislature in the exercise of the police power 'is presumed to be valid and one attacking its validity has the burden of affirmatively and clearly establishing its invalidity.' " *Governor of Md. v. Exxon Corp.,* 279 Md. 410, 426, 370 A.2d 1102 (1977) (quoting *Salisbury Beauty Schools v. State Bd. of Cosmetologists,* 268 Md. 32, 48, 300 A.2d 367 (1973)). " ' [T]he legislature is presumed to have acted within constitutional limits so that if any state of facts reasonably can be conceived that would sustain the constitutionality of the statute, the existence of that state of facts as a basis for the passage of the law must be assumed.' " *Md. Aggregates Ass'n., Inc. v. State,* 337 Md. 658, 670, 655 A.2d 886 (1995) (quoting *Edgewood Nursing Home v. Maxwell,* 282 Md. 422, 427, 384 A.2d 748 (1978)).

 VNA argues that we should disregard the Department's explanation of why the General Assembly used data from calendar year 2001 to determine which home-based hospice care providers would be exempt from the CON requirement. VNA states that the Department did not present that information during the administrative proceedings, so it cannot do so now.

Although we could fairly assume, on our own, that the General Assembly selected 2001 as the year during which the most recent data was available, we need not trouble to do so, because it is VNA's burden to demonstrate that more recent or more reliable data was available at that time. *See Exxon Corp.,* 279 Md. at 426, 370 A.2d 1102. VNA has not carried that burden. We conclude, therefore, that VNA has not overcome the presumption of validity in the General Assembly's decision to rely on the 2001 data when limiting the exemption of the CON requirement to those hospice care providers that had rendered home-based services that year.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE**

FINAL DECISION OF THE DEPARTMENT OF HEALTH AND MENTAL HYGIENE.

COSTS TO BE PAID BY APPELLEE.