MISSOURI REAL ESTATE
COMMISSION,
Appellant,

v.

KENNETH G. RAYFORD, Respondent.

No. WD 70723.

Missouri Court of Appeals,
Western District.

April 13, 2010.

Craig H. Jacobs, Jefferson City, MO, for appellant.

Mark S. Bryant, Kansas City, MO, for respondent.

Before Division Four: THOMAS H. NEWTON, Chief Judge, Presiding, JAMES M. SMART, JR., Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Missouri Real Estate Commission (MREC) appeals from the Missouri Administrative Hearing Commission's (AHC) decision holding that Kenneth Rayford was entitled to retain his real estate salesperson's license. MREC contends that section 339.100.5,[1] which became effective in 2006, mandates the revocation of Rayford's license, which he secured in 2003 or 2004, because of a 1970 conviction for second degree murder. We affirm.

**Factual and Procedural History**

On April 24, 1970, nineteen-year-old Rayford pleaded nolo contendere to second degree murder and was sentenced to thirty years in prison. While in prison, Rayford earned degrees in psychology and sociology. In 1988, Rayford was released from prison. In 1993, Rayford was released from parole. Rayford enrolled in real estate school and subsequently applied for a real estate salesperson's license.

---

1. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

In his application, Rayford disclosed his prior conviction for second degree murder. In approximately 2003 or 2004, after a thorough investigation by MREC, Rayford was issued his real estate license and has never been subject to discipline.

On August 28, 2006, section 339.100.5 took effect. It provides that "a broker or salesperson's license shall be revoked, or in the case of an applicant, shall not be issued, if the licensee or applicant has pleaded guilty to, entered a plea of nolo contendere to, or been found guilty of . . . [a]ny dangerous felony as defined under section 556.061, RSMo."[2] By its terms, section 339.100.5 applies to two categories of individuals—brokers and salespersons who are already licensed, and applicants seeking licensure.

On May 4, 2007, MREC revoked Rayford's license in reliance on section 339.100.5. Rayford appealed the revocation to the AHC. On November 19, 2007, the AHC determined that section 339.100.5 did not require revocation of Rayford's license. Specifically, the AHC construed section 339.100.5 to exclude from its coverage "a licensee who held a license on August 28, 2006,[3] but not when the criminal proceeding occurred." Because Rayford fell within this narrow exception, the AHC concluded his license was not subject to mandatory revocation.

On December 19, 2007, MREC appealed the AHC's decision to the trial court. On January 15, 2009, the trial court affirmed the decision of the AHC. MREC appeals.

## Standard of Review

 Our review of an administrative agency decision interpreting a statute is *de novo. Morton v. Brenner,* 842 S.W.2d 538, 540 (Mo. banc 1992). "We review the decision of the Commission, not the judgment of the trial court." *State Bd. of Registration for Healing Arts v. Boston,* 72 S.W.3d 260, 263 (Mo.App. W.D.2002).

## Analysis

In its sole point on appeal, MREC contends that the AHC erred in holding that section 339.100.5 does not mandate the revocation of Rayford's license. MREC argues that the AHC improperly interpreted section 339.100.5 to exclude persons like Rayford because section 339.100.5 as written reflects a plain and clear legislative intent to subject all licensees to its terms, including licensees who pleaded to, or were found guilty of, a qualifying criminal offense prior to the statute's effective date, regardless whether licensed at the time. MREC also contends that retroactive application of section 339.100.5 does not violate the prohibition against retrospective laws set forth in article I, section 13 of the Missouri Constitution. The AHC did not discuss this issue, as the AHC is not statutorily authorized to evaluate constitutional principles or to declare a statute invalid. *State Tax Comm'n v. Admin. Hearing Comm'n,* 641 S.W.2d 69, 75 (Mo. banc 1982). MREC concedes that section 339.100.5 has been applied retroactively to Rayford. Thus, we will begin our analysis with the issue the AHC could not reach— the constitutionality of this retroactive application.

## Retroactive Application of Section 339.100.5

 Article I, section 13 of the Missouri Constitution provides "[t]hat no ex

---

2. Murder in the second degree is listed as a dangerous felony in the current version of section 556.061. However, section 556.061 did not exist at the time of Rayford's offense. The AHC nonetheless found that Rayford's conviction for murder in the second degree was a qualifying offense under section 339.100.5. This finding is not contested on appeal.

3. Section 339.100.5's effective date.

post facto law, nor law . . . retrospective in its operation . . . can be enacted. This area of the law makes use of the terms ex post facto, retrospective and retroactive." *State v. Thomaston,* 726 S.W.2d 448, 459 (Mo.App. W.D.1987). There is a distinct and legally material difference in the meaning of these terms, though the terms are often misused by both bench and bar. *Id.* "The term *ex post facto* is a term applicable to *criminal* legislation only . . . while the term *retrospective* refers exclusively to laws related to civil rights and remedies." *Id.* Though the terms retroactive and retrospective are frequently interchanged, in fact they are not synonymous. "A law is 'retroactive' in its operation when it looks or acts backward from its effective date and is retrospective 'if it has the same effect as to past transactions or considerations as to future ones. . . .' " *Id.* at 459–60, (quoting *State ex rel. Meyer v. Cobb,* 467 S.W.2d 854, 856 (Mo.1971)). In other words, " '[t]he constitutional inhibition against laws retrospective in operation . . . does not mean that no statute relating to past transactions can be constitutionally passed, but rather, that none can be allowed to operate retrospectively so as to affect such past transactions to the substantial prejudice of parties interested.' " *Id.* at 460 (quoting *Fisher v. Reorganized Sch. Dist. No. R–V of Grundy County,* 567 S.W.2d 647, 649 (Mo. banc 1978)). Our Missouri Supreme Court has defined "retrospective law" as: "[a] law is retrospective in *operation* if it takes away or impairs vested or substantial rights acquired under existing laws *or* imposes new obligations, duties, or disabilities with respect to past transactions." *Hess v. Chase Manhattan Bank,* 220 S.W.3d 758, 769 (Mo. banc 2007) (citing *Doe v. Roman Catholic*

*Diocese of Jefferson City,* 862 S.W.2d 338, 340 (Mo. banc 1993)) (emphasis added).[4] Conversely, "when a law makes only a procedural change, it is not *retrospective* and hence can be applied *retroactively.*" *Thomaston,* 726 S.W.2d at 460; *See Scheidegger v. Greene,* 451 S.W.2d 135, 137 (Mo. banc 1970) (stating article I, section 13 does not apply to statutes dealing only with procedural or remedial matters).

Thus, to determine whether retroactive application of section 339.100.5 to persons like Rayford is constitutionally permissible, we must determine if section 399.100.5 is retrospective. In other words, we must determine whether section 339.100.5 *either* takes away or impairs a vested or substantial right *or* imposes a new obligation, duty, or disability with respect to a past transaction. *F.R. v. St. Charles County Sheriff's Dep't,* 301 S.W.3d 56, 61–62 (Mo. banc 2010)[5] (stating references to vested rights *or* new obligation, duty or disability are disjunctive options, and finding of retrospective application can be based on either option).

### (i) Vested or Substantial Right

MREC contends that Rayford has no vested or substantial right to hold a real estate salesperson's license. We agree.

In *Fisher,* our Supreme Court noted that "a vested right '. . . must be something more than a mere expectation based upon an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of property or to the present or future enjoyment of the demand, or a legal exemption from a demand made by anoth-

---

4. The Supreme Court's definition of retrospective law is nearly identical to the definition of retrospective law found in Black's Law Dictionary 1317–18 (6th ed.1990).

5. Consolidated with *State v. Raynor.*

er.'" 567 S.W.2d at 649 (quoting *People ex rel. Eitel v. Lindheimer,* 371 Ill. 367, 21 N.E.2d 318, 321 (1939)). A vested right has been described as a right with an "'independent existence, 'in the sense that once it vests it is no longer dependent for its assertion upon the common law or statute under which it may have been acquired." *Ficarra v. Dep't of Regulatory Agencies,* 849 P.2d 6, 15 (Colo.1993) (citation omitted). "Vested right" is defined as a "right complete and consummated, and of such character that it cannot be divested without the consent of the person to whom it belongs, and fixed or established, and no longer open to controversy." Black's Law Dictionary 1402 (5th ed.1979).

Applying these principles, we cannot conclude that a professional license of any kind represents a vested right. Though we have been unable to locate a Missouri case with facts similar to those before us involving revocation of a professional license based solely on an antecedent conviction, it has been stated in other Missouri decisions that a professional license is not a vested right, but rather a privilege. *Boston,* 72 S.W.3d at 266 (professional license is a privilege granted by the state); *State ex rel. Schneider's Credit Jewelers v. Brackman,* 260 S.W.2d 800, 814 (Mo.App.1953) (professional license in the healing arts is a privilege), *preliminary writ made absolute,* 272 S.W.2d 289 (Mo. banc 1954). Other Missouri decisions have held there is no vested right to practice a particular profession or to hold a particular professional license. *State Bd. of Registration for the Healing Arts v. Giffen,* 651 S.W.2d 475, 479 (Mo. banc 1983); *State v. Davis,* 194 Mo. 485, 92 S.W. 484, 489 (1906) ("[T]here can be no such thing as a vested right in the practice of medicine.").

Other jurisdictions have similarly concluded that professional licenses and li-

censes to operate a business do not create a vested right. *See Dep't of Health & Mental Hygiene v. VNA Hospice of Md.,* 176 Md.App. 475, 933 A.2d 512, 521–22 (2007) (vacated on other grounds by 406 Md. 584, 961 A.2d 557 (Md.Ct. Spec.App.2008)) (citations summarizing holdings from numerous other jurisdictions omitted). "It has been said that a professional license is not 'an absolute vested right,' but is at most 'only a conditional right which is subordinate to the police power of the State to protect and preserve the public health' and welfare." *Landsman v. Md. Home Improvement Comm'n,* 154 Md.App. 241, 839 A.2d 743, 753 (Md. Ct.Spec.App.2003) (quoting *Dr. K. v. State Bd. of Physician Quality Assurance,* 632 A.2d 453 (Md.Ct.Spec.App.1993)); *Dep't of Health and Mental Hygiene,* 933 A.2d at 523 ("We therefore conclude that, like other professional licenses, a license to deliver home-based hospice is not an absolute vested right...."). Because a license is only a "grant of permission to act," suspension or revocation of a license "does not interfere with a substantive or vested right." *Landsman,* 839 A.2d at 753. *See Lambert v. Yellowley,* 272 U.S. 581, 596, 47 S.Ct. 210, 71 L.Ed. 422 (1926) ("[T]here is no right to practice medicine which is not subordinate to the police power of the states.").

█ In short, no one who possesses a license has the right or ability to presume the license is "vested" or that the license has an "independent existence." Rather, the license remains subject to the laws and regulations which authorized its issuance in the first place, which is the antithesis of a vested right. Those laws and regulations may impose criteria for eligibility, both initially or following licensure, may require annual or other renewals, and may impose conditions on a license's continued viability tied to standards of conduct. A

license provides one the authority to provide or perform certain services, or to engage in a particular business or avocation. Obtaining a license may well create a sense of dependence, even reliance, on the license's continued viability, so much so that its revocation, suspension, or lack of renewal may result in severe hardship to one whose livelihood has come to depend on the license. However, the importance of the license to the licensee has no bearing on whether the license is a vested or substantial right for purposes of article I, section 13 of the Missouri Constitution. The definition of "license" belies a contrary conclusion. "License" is defined as "[a] revocable permission to commit some act that would otherwise be unlawful." Black's Law Dictionary 931 (7th ed.1999). A revocable grant of permission is not a vested right.

We are mindful that once a license has been obtained, the licensee will generally acquire a property right sufficient to require substantive and procedural due process before the license can be impaired, suspended, or revoked. *Colyer v. State Bd. of Registration for Healing Arts*, 257 S.W.3d 139, 144 (Mo.App. W.D.2008); *Larocca v. State Bd. of Registration for Healing Arts*, 897 S.W.2d 37, 42 (Mo.App. E.D. 1995). For example, the federal district court has concluded that "[u]nder Missouri law, physicians have a property interest in their licenses and they are entitled to procedural due process before their licenses are revoked." *Crum v. Mo. Dir. of Revenue*, 455 F.Supp.2d 978, 986 (W.D.Mo. 2006) (citing *Larocca*, 897 S.W.2d at 42).

"Before depriving a citizen of a property right, the property owner must be given notice and an appropriate opportunity to be heard." *Id.* at 987. However, the mere fact that a license carries with it rights sufficient to require due process before the license can be impaired or revoked does not mean the license is a "vested right" entitled to protection from the application of retrospective laws. In *Crum*, after concluding that the holder of a professional license is entitled to procedural and substantive due process, the federal district court held that there is no vested right to hold a professional license and that a statute requiring revocation of a license based on noncompliance with tax laws was not unconstitutionally retrospective. 455 F.Supp.2d at 997–98.[6] *See Dep't of Health & Mental Hygiene*, 933 A.2d at 523 ("That VNA's license is not a vested property right does not mean, of course, that it is not subject to procedural due process before it can be revoked, suspended, or otherwise altered.").

We conclude, therefore, that section 339.100.5, does not satisfy the first disjunctive definition of a retrospective law, as a license, including a professional license, is not a vested or substantial right as envisioned by article I, section 13 of the Missouri Constitution. We must next evaluate whether section 339.100.5 impermissibly imposes a new obligation, duty, or disability with respect to a past transaction-the second disjunctive definition of a retrospective law.

#### (ii) New Obligation, Duty or Disability with Respect to Past Transactions

**6.** On appeal, the Eighth Circuit concluded the subject statute, which implicated a medical license for non-compliance with certain tax laws, was prospective and not retroactive in its application, rendering unnecessary any discussion of retrospective application. *Crum v. Vincent*, 493 F.3d 988, 997 (8th Cir.2007). Though unfiled tax returns predating the subject statute were at issue, the licensed professional remained subject to unresolved liability for the non-filing and non-payment of taxes relating to those returns following the effective date of the subject statute, and in effect was in continuing violation of the tax laws. *Id.*

Beyond repeating the oft cited definition of "retrospective," very few Missouri cases have analyzed the second of the two articulated means by which a law can be deemed retrospective—whether the law imposes new obligations, duties, or disabilities with respect to past transactions. It could be argued that any law that has retroactive application in some manner imposes a new duty or obligation or a new disability with respect to a past transaction. However, it is settled that the prohibition against retrospective laws deriving from this prong of the definition " 'does not mean that no statute relating to past transactions can be constitutionally passed, but rather that none can be allowed to operate retrospectively so as to affect such past transactions to the substantial prejudice of parties interested.' " *Casey's Mktg. Co. v. Land Clearance for Redevelopment Auth. of Independence, Mo.*, 101 S.W.3d 23, 28–29 (Mo.App. W.D. 2003) (citations omitted). Stated practically, "a statute is not retrospective because it merely relates to prior facts or transactions but does not change their legal effect, or because some of the requisites for its action are drawn from a time antecedent to its passage, or because it fixes the status of a person for the purpose of its operation." *State ex rel. Sweezer v. Green*, 360 Mo. 1249, 232 S.W.2d 897, 900 (1950). "A statute which does not ... impose a new or greater duty is not unconstitutionally retrospective merely because it relates to prior facts or transactions." *Boston*, 72 S.W.3d at 265–66 (citing *Hoskins v. Box*, 54 S.W.3d 736, 739 (Mo.App. W.D.2001)).

Our Supreme Court has carefully analyzed when a retroactive law should be deemed retrospective because it imposes a new duty, obligation, or disability on a past transaction. In *Doe v. Phillips*, 194 S.W.3d 833, 849–50 (Mo. banc 2006)[7], the Supreme Court evaluated a challenge to "Megan's Law," and in particular a contention that article I, section 13's proscription against retrospective laws "precludes application of Megan's Law to those who pled guilty or were found guilty prior to the act's ... effective date." *Id.* at 850.[8] The Court concluded that "the bar on laws that operate retrospectively is violated by the imposition of an affirmative obligation ... to register upon release and then regularly thereafter. The obligation to *register* by its nature imposes a new duty or obligation." *Id.* at 852.

In so concluding, the Court carefully distinguished other scenarios. The Court noted that in *Jerry–Russell Bliss v. Hazardous Waste*, 702 S.W.2d 77 (Mo. banc 1985), "an act prohibiting issuance of a hazardous waste management license to a habitual violators of past hazardous waste laws" was not retrospective as "the act only made past practices of the company 'a consideration for the granting or denial of a hazardous waste transporter's license.' " *Phillips*, 194 S.W.3d at 850–51 (quoting *Bliss*, 702 S.W.2d at 81). The Court also distinguished its conclusion in *La–Z–Boy Chair Co. v. Director of Economic Development*, 983 S.W.2d 523 (Mo. banc 1999), where it "rejected a taxpayer's argument that it had a vested right to assume that because it had a tax exemption for its new

---

7. Because this opinion cites to two cases with the first name "Doe," we will short cite this case by the second name throughout the rest of the opinion.

8. Though Megan's Law imposes registration requirements based on criminal conduct, it is intended to be regulatory in nature rather than punitive. *In re R.W. v. Sanders*, 168 S.W.3d 65, 70 (Mo. banc 2005). As such, the language in article I, section 13 relating to the prohibition against *ex post facto* laws has no application to Megan's Law. *Id.* Instead, the definition of "retrospective" applicable to civil rights and remedies is applicable. *Id.* at 69.

plant when built, that exemption would continue" as "no one has a vested right that the law will remain unchanged." *Phillips*, 194 S.W.3d at 851 (citing *La–Z–Boy*, 983 S.W.2d at 525). The Court also discussed its holding in *Corvera Abatement Technologies, Inc. v. Air Conservation Commission*, 973 S.W.2d 851 (Mo. banc 1998), where an asbestos abatement project regulation which had been amended was being applied only to acts " 'that occurred after the amendment of the statute and the publication of the corrected fiscal note,' " and as a result, the law was not retrospective, even though it permitted consideration of antecedent actions in making future decisions. *Phillips*, 194 S.W.3d at 851 (quoting *Corvera*, 973 S.W.2d at 856). Finally, the Court discussed its holding in *Doe v. Roman Catholic Diocese*, 862 S.W.2d 338 (Mo. banc 1993), where it held " 'once the original statute of limitations expires and bars the plaintiff's action, the defendant has acquired a vested right to be free from suit, a right that is substantive in nature, and therefore, *article I, section 13*, prohibits the legislative revival of the cause of action.' " *Phillips*, 194 S.W.3d at 851 (quoting *Doe v. Roman Catholic Diocese*, 862 S.W.2d at 341).

Consistent with, and based on the combination of, these principles, the Supreme Court concluded that the Does could not analogize having been released from parole to the expiration of a statute of limitations, as to claim a "vested right" that no further consequence could be imposed on them by virtue of their prior convictions. *Phillips*, 194 S.W.3d at 851–52. The Court also rejected the Does' complaints that "publication of true information about the Does affects a past transaction to their substantial detriment by imposing a new obligation, adding a new duty or attaching a new disability in respect to transactions or consideration already past." *Id.* at 852; *see Bliss*, 702 S.W.2d at 82. "The *publica-*

*tion* of this information merely looks back at antecedent actions, as did the regulations in *Corvera*." *Phillips*, 194 S.W.3d at 852. However, the Does' complaint that Megan's law impermissibly required them to register was afforded weight:

> [T]he Does . . . are complaining about application of the registration requirement to them, based *solely* on their pre-act criminal conduct. . . . [T]he application of that requirement truly is retrospective in its operation. It looks solely at their past conduct and uses that conduct not merely as a basis for *future* decision-making by the state, in regard to things such as the issuance of a license, or as a bar to certain *future* conduct by the Does, such as voting. Rather, it specifically requires the Does to fulfill a new obligation and imposes a new duty to register and to maintain and update the registration regularly based *solely* on their offenses prior to its enactment. This violates . . . our constitutional ban on laws retrospective in operation.

*Id.* (emphasis added).

Most recently, in *F.R.*, the Supreme Court again struck as retrospective two laws that imposed "new obligations or duties . . . giving new legal effect" to antecedent convictions. 301 S.W.3d at 64. In the case of *F.R.*, the statute in question divested a prior offender of an ability to live within 1,000 feet of a school or daycare and imposed a duty to insure any future residence is greater than 1,000 feet from a school or day care. *Id.* at 63. In the case of Raynor, the statute in question required a prior offender to meet four obligations on Halloween night. *Id.* at 60 n. 7. In each case, the new duty or disability subjected the prior offender to a potential penalty-in these cases, potential criminal liability. *Id.* at 61. Appreciating the fine "distinction between laws such as

those in this case that look to past conduct, and regulatory laws that do not impose new duties or obligations on settled transactions," the court discussed *State ex rel. Koster v. Olive*, 282 S.W.3d 842 (Mo. banc 2009). *F.R.*, 301 S.W.3d at 64. In *Olive*, a statute requiring a landowner to obtain a registration permit for a previously constructed dam was deemed not retrospective. 282 S.W.3d at 848. " 'The dam's present use and its present ability to hold back substantial amounts of water is the issue. The duty imposed to obtain a registration permit is based on the current existence, operation and safety of the dam and is distinguishable from the application of the registration requirements in *Phillips* to a single past criminal act.' " *F.R.*, 301 S.W.3d at 64 (quoting *Olive*, 282 S.W.3d at 848).

In light of this instructive guidance from our Supreme Court, we conclude that section 339.100.5, which retroactively converts an antecedent criminal conviction into a *per se* basis for ineligibility to hold a real estate license, would be unconstitutionally retrospective if applied to mandate the revocation of a real estate license in force on the statute's effective date based solely on the antecedent criminal proceeding. Section 339.100.5 looks solely at Rayford's past plea of nolo contendere and uses that conduct not as a basis for future decision-making by the state but to impose a new duty on Rayford to relinquish an existing license and/or a new disability on Rayford of *per se* ineligibility to continue to hold an existing license. As in *Phillips* and *F.R.*, Rayford is a convicted felon who has served his time and cannot be presumed to be a continuing felon or a present or future danger. Thus, section 339.100.5, which imposes a new duty, obligation, or disability on Rayford based solely on his single past criminal act is retrospective.

In reaching our conclusion we are mindful of, and emphasize, that the aforementioned litany of cases from the Supreme Court **would not** prohibit: (1) the application of section 339.100.5 to bar an *applicant* with an antecedent qualifying criminal offense from being denied a real estate license, as in such a case the past conduct is being looked at "as a basis for future decision-making by the state, in regard to things such as the issuance of a license;" *Phillips*, 194 S.W.3d at 852; (2) the application of section 339.100.5 to permit consideration of an antecedent qualifying criminal offense along with other conduct occurring subsequent to the statute's effective date in evaluating appropriate discipline, including suspension or revocation of a license; *See Barbieri v. Morris*, 315 S.W.2d 711, 714–15 (Mo. banc 1958) (amended statute which permitted antecedent traffic violations to be considered along with subsequent traffic violations to classify a driver as an habitual offender warranting revocation of a driver's license did not violate prohibition against retrospective laws because antecedent conduct was not sole basis for loss of license); or (3) the application of section 339.100.5 to license renewals, if the license expires following a defined period of time with no reasonable assurance the license will be summarily renewed subject only to timely re-application and/or payment of a required fee, as consideration of an antecedent criminal proceeding would then be in connection with a future licensing decision, consistent with *Bliss. See Phillips*, 194 S.W.3d at 850–51. In short, and as a result of our analysis, section 339.100.5 should be read: (i) to apply to all applicants for a real estate license including those with antecedent qualifying criminal offenses predating section 339.100.5's effective date, (ii) to apply to any licensee who pleads guilty to, or is found guilty of, a qualifying criminal offense subsequent to

the effective date of section 339.100.5, (iii) but not to apply to any license in effect when section 339.100.5 was enacted if revocation of the license is sought based solely on the antecedent qualifying criminal offense.[9]

MREC complains that such an interpretation will result in applicants and licensees, the two classes of persons covered by section 339.100.5, being treated differently. MREC notes that a person who applies for a real estate license after the effective date of section 339.100.5 will be ineligible to obtain a license if the applicant has pleaded guilty to, or been found guilty of, one of the qualifying criminal offenses at any time prior to the application, even if the guilty determination predates the effective date of the statute. That is true. It is also constitutionally permissible, as discussed in *Doe v. Phillips*, 194 S.W.3d at 851–52. Consideration of an antecedent event in connection with a *future* desire to secure licensure, even where the antecedent event would not previously have been a *per se* basis for ineligibility, is not a retrospective application of section 339.100.5. Moreover, an applicant has no entitlement to believe that the law with respect to eligibility requirements for licensure will always remain the same. Thus, though section 339.100.5 does, in fact, change the materiality of a past transaction with respect to an applicant, it does so only with respect to an application that post dates the effective date of section 339.100.5. In this regard, the application of section 339.100.5 is prospective, not retrospective. *See Boston,* 72 S.W.3d at 265–66 (applicant for a professional license could not complain that a statute imposing a limit on the number of times a licensing exam could be unsuccessfully taken—a limit already passed by the applicant—was retrospective).

Our decision today will apply equally to all who held real estate licenses on the effective date of section 339.100.5 and will prevent mandatory revocation of such licenses should the licensee have pleaded to, or been found guilty of, a qualifying criminal offense prior to the statute's effective date, regardless whether the offense was committed *before* or *after* the license was obtained. In so concluding, we recognize that the AHC has, since its decision in this case, construed section 339.100.5 to require mandatory revocation of a license in place on the statute's effective date where qualifying criminal proceedings occurred *before* section 339.100.5's effective date but *after* the license was procured. *Engelmeyer v. Mo. Real Estate Comm'n,* No. 07–1883 RE, 2008 WL 4182663 (Admin. Hearing Comm'n June 27, 2008), http://168.166.15.111/Clients/MOAHC/Public/Case Details.aspx? & EntityID=10019036; *Woodard v. Mo. Real Estate Comm'n,* No. 07–0656 RE, 2008 WL 2309542 (Admin. Hearing Comm'n Apr. 21, 2008), http://168.166.15.111/Clients/MOAHC/ Public/Case—Details.aspx? & EntityID=10016009. In *Woodard,* the AHC distinguished Rayford, noting Rayford was neither an applicant nor licensee when he pleaded nolo contendere to second degree murder, where Woodard was already licensed when he was determined guilty of his qualifying criminal offense. *Woodard,* 2008 WL 2309542 at 7–8. However, the AHC expressly noted it was drawing a distinction between section 339.100.5's application to

---

9. A statute is presumed valid and we " 'resolve all doubt in favor of the act's validity' and 'make every reasonable intendment to sustain the constitutionality of the statute.' " *Cannon v. Cannon,* 280 S.W.3d 79, 83 (Mo. banc 2009) (citation omitted). As directed in *Phillips,* we construe section 339.100.5 within the parameters of the proscription against retrospective application of a statute. 194 S.W.3d at 852.

Rayford and Woodard based *solely* on the language of the statute, and not on any constitutional analysis regarding the propriety of retrospective operation of section 339.100.5, a matter about which the AHC has no authority to opine. *Woodard,* 2008 WL 2309542 at 7–8. This same careful caveat was expressed in *Engelmeyer,* 2008 WL 4182663 at 4. We respect the AHC's recognition of its constraint to evaluate constitutional principles and/or to declare a statute invalid. *State Tax Comm'n,* 641 S.W.2d at 75. However, we conclude there is no distinction between a licensee whose criminal proceedings occurred before or after licensure for purposes of determining whether section 339.100.5 has been retrospectively applied. The only material inquiry is whether a person held a real estate license on section 339.100.5's effective date. If so, section 339.100.5 cannot be applied to require mandatory revocation of the license based solely on a criminal proceeding predating the statute's effective date, whether the person was licensed at the time of the criminal proceeding or not.

### The Relevance of Legislative Intent

MREC complains that interpreting section 339.100.5 as we do today is inconsistent with the legislature's clear intent to apply section 339.100.5 retroactively, as reflected by the phrase *"has pleaded guilty to, entered a plea of nolo contendere to, or been found guilty of"* employed in the statute. MREC cites *Barbieri* and *Boston,* for this proposition.[10] We concede that in both cases the legislature's use of similar past participle phrases mandated a conclusion that the legislature clearly intended the involved statute to have retroactive effect.[11] However, *Boston* and *Barbieri* did not involve vested or substantial rights,[12] or the imposition of new duties, obligations or disabilities on past transactions in a manner sufficient to constitute a retrospective law. MREC's mistake in relying on *Boston* and *Barbieri* is in concluding that either case stands for the proposition that legislative intent can be independently dispositive of a statute's permissible retroactive application, without regard to compliance with article I, section 13 of the Missouri Constitution.

MREC's error is not without colorable support. We note there are oft repeated passages in many of our State's reported decisions which have the effect of confusing what is actually a very simple concept. Some decisions have concluded that "prospective application of a statute is presumed unless the legislature demonstrates

10. Because we have concluded that section 339.100.5 as applied to Rayford is impermissibly retrospective, we need not reach whether the AHC properly construed section 339.100.5 to exclude Rayford from its coverage because Rayford was not a licensee at the time he plead nolo contendere to second degree murder, though we believe the AHC's construction to be strained, and thus suspect, in light of *Boston* and *Barbieri,* herein discussed.

11. In *Barbieri,* a statutory amendment defining habitual violator as anyone who "has been" adjudged guilty of a moving violation at least four times within two years, reflected, by use of the phrase "has been" a clear intent to permit reference back to moving violations which occurred before the statute's effective date. 315 S.W.2d at 713–14. In *Boston,* the legislature's use of the past participle "has failed" in an amended statute, which limited the number of times an applicant could unsuccessfully take the physical therapist licensing exam, was determined to reflect a clear intent to bar an applicant though her three failed attempts at the exam predated the statute's effective date. 72 S.W.3d at 265.

12. The right to drive an automobile is not a vested right. *Barbieri,* 315 S.W.2d at 715. There is no substantive right conferred by licensing statutes on applicants seeking licensure. *Boston,* 72 S.W.3d at 266.

a clear intent to apply the amended statute retroactively, *or* if the statute is procedural or remedial in nature." *Ball–Sawyers v. Blue Springs Sch. Dist.,* 286 S.W.3d 247, 256 (Mo.App. W.D.2009) (citing *Lawson v. Ford Motor Co.,* 217 S.W.3d 345, 349 (Mo. App. E.D.2007)) (emphasis added). This "standard" suggests there are two independent but equal means by which a statute can be deemed permissibly retroactive, one of which is based purely on legislative intent. Some decisions conclude that "[a] statutory provision that is remedial or procedural operates retrospectively [13] *unless* the legislature expressly states otherwise." *Wilkes v. Mo. Highway & Transp. Comm'n,* 762 S.W.2d 27, 28 (Mo. banc 1988) (emphasis added). This "standard" suggests that a procedural law will be automatically applied retroactively and that legislative intent will be a pertinent inquiry only to determine whether the statute should be applied prospectively. Some decisions have stated that "Article I, Section 13 bars retrospective application of a statute except where: (1) legislative intent is clearly manifested that the statute is to be applied retrospectively; [14] *and* (2) the statute is procedural only and does not affect any substantive or vested right." *Boston,* 72 S.W.3d at 263 (emphasis added). This "standard" suggests that both an express legislative intent to retroactively apply a statute and a constitutionally permissible basis to do so must be found. Even our Supreme Court has unwittingly added to the confusion. It has stated that "[s]tatutes are generally presumed to operate prospectively, 'unless the legislative intent that they be given retroactive operation clearly appears from the express language of the act or by necessary or unavoidable implication.' " *Dep't of Soc.*

*Servs. v. Villa Capri Homes, Inc.,* 684 S.W.2d 327, 332 (Mo. banc 1985) (quoting *Lincoln Credit Co. v. Peach,* 636 S.W.2d 31, 34 (Mo. banc 1982) (appeal dismissed 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983))). This passage, standing alone, suggests that legislative intent forms an independent basis to determine permissible retroactive application of a statute and has, unfortunately, been repeated in subsequent cases, including *Callahan v. Cardinal Glennon Hospital,* 863 S.W.2d 852, 872 (Mo. banc 1993), without noting that the cited passage from *Villa Capri* continued with the critically important proviso that "[i]f the presumption normally favoring prospective operation is overcome [as a result of evaluation of legislative intent], the inquiry focuses on whether the statute falls within the proscription against retrospective laws." *Villa Capri,* 684 S.W.2d at 332 (citing *Lincoln Credit Co.,* 636 S.W.2d at 34–35).

■ We conclude that reported decisions in this State, which may be read to suggest that legislative intent to apply a statute retroactively constitutes an independent exception to the presumption of prospective application of statutes, misspeak. There is no independent exception born of legislative intent to the proscription against retrospective laws found in our Missouri Constitution. Legislative intent to apply a law retroactively, no matter how clear, "cannot supercede [sic] a constitutional provision." *Doe,* 862 S.W.2d at 341; *see also Villa Capri,* 684 S.W.2d at 332 n. 5 ("The Department contends that if there is a clear intent that a statute apply retroactively then there is an exception to the bar against retrospective laws. Such

---

**13.** This represents an example of the confusion that results from misuse and improper interchanging of the terms "retroactive" and "retrospective."

**14.** *See* note 12.

is not the case; the legislative intent is pertinent only to the construction of the statute and whether the presumption against retroactivity should not apply."); *Phillips,* 194 S.W.3d at 851 ("The clear legislative intent to apply the law retrospectively could not supersede the specific prohibition on retrospective laws."). We conclude, therefore, that MREC's contention that section 339.100.5 must be applied retroactively because the legislature clearly intended such an application, notwithstanding that the statute is retrospective in its effect in violation of article I, section 13 of the Missouri Constitution, is without merit.

### Conclusion

We conclude that section 339.100.5 cannot be applied retroactively to mandatorily revoke a real estate license held at the time the statute became effective based on a plea or finding of guilt predating the effective date of the statute as such an application would violate the ban against retrospective laws set forth in article I section 13 of the Missouri Constitution. We therefore affirm the trial court's judgment affirming the AHC's decision.[15]

All concur.

---

**15.** *Bird v. Mo. Bd. of Architects, Prof'l Eng'rs, Prof'l Land Surveyors & Landscape Architects,* 259 S.W.3d 516, 520 (Mo. banc 2008) ("While the decision reviewed on appeal is that of the AHC and not the circuit court, an appellate court reverses, affirms or otherwise acts upon the judgment of the trial court. Rule 84.14.")