

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| **UNION MANOR, A SOLE PROPRIETORSHIP,** | **WD82776** |
| **Respondent,** | **OPINION FILED:** |
| **v.** | **March 31, 2020** |
| **MISSOURI DEPARTMENT OF HEALTH AND SENIOR SERVICES,** | |
| **Appellant.** | |

**Appeal from the Circuit Court of Cole County, Missouri
The Honorable Daniel Richard Green, Judge**

**Before Division One:
Thomas N. Chapman, P.J., Mark D. Pfeiffer, and Anthony Rex Gabbert, JJ.**

The Missouri Department of Health and Human Services (Department) appeals from a summary judgment entered in favor of Union Manor, A Sole Proprietorship (Union Manor) by the Circuit Court of Cole County, Missouri. The Department contends that Union Manor (a long term care facility) is obligated to comply with a regulatory requirement that its bedrooms provide 70 square feet of floor space per resident. The circuit court ruled that Union Manor is entitled to take advantage of a "grandfather clause" set forth in the same regulatory provision, allowing older facilities to meet a lower minimum floor space requirement of 60 square feet per resident in private (single) and multiple occupancy bedrooms. Because Union Manor is entitled to the exemption with respect to its ***multiple occupancy*** bedrooms, but not with respect to its ***private*** bedrooms, we affirm in part, reverse in part, and remand for further proceedings.

*Facts & Procedural Background*

Union Manor was licensed as a residential care facility I (RCF I) in January 1985. In December 2001, Union Manor applied to the Department for licensure as a residential care facility II (RCF II) (residential care facilities II are now referred to as "assisted living facilities").[1] Upon receiving Union Manor's application, the Department conducted a consultation visit at Union Manor's facility to determine whether it would grant the application for RCF II licensure. In July 2002, Union Manor was notified that, pursuant to standards promulgated by the Department, the facility's bedrooms needed to provide floor space of 70 square feet for each resident living in the room. *See* 19 CSR 30-86.012(6). The letter stated further that several of the bedrooms were "a few square feet short of meeting requirements" and that Union Manor could be licensed as an RCF II for a maximum of 35 residents. The Department advised Union Manor that it "may want to consider requesting an exception for these rooms" if it intended to increase its capacity above 35 residents.

In an April 2004 letter, Union Manor requested an exception to the regulatory requirement that it provide each of its residents with 70 square feet of bedroom space and allow the facility to operate as an RCF II while accommodating 52 residents. Following an inspection, the Department granted Union Manor's request for an exception on the condition that the facility provide basement "storage lockers or wardrobe units" for several of the bedrooms that did not meet the square footage requirement. The exception was valid for a period of three years and subject to renewal thereafter. Union Manor was then licensed as an RCF II in June 2004.

---

[1] *See* § 198.005. Statutory references are to RSMo 2016 as supplemented.

In 2010, Union Manor requested an exception to the square footage requirement "to allow smaller resident rooms." In an October 2010 letter, the Department granted the exception request for a period of two years. The Department stated that Union Manor could obtain a two-year renewal of the exception in October 2012, provided it "made progress toward reducing its census during the initial exception period[.]" No further exceptions would be granted after October 2012. The Department further advised that by October 2014, Union Manor would be required to reduce its census to 32 residents or renovate its bedrooms as necessary to comply with the requirement that it provide each resident with 70 square feet of floor space.

Union Manor requested an extension to its square footage exception in September 2012; the exception was granted in May 2013. In August 2016, Union Manor applied to the Department for a change of owner/operator. In December 2016, the Department sent Union Manor a letter explaining that the facility was only permitted to house 32 residents due to square footage limitations. At the time, 40 individuals were residing at the facility. Thus, the letter advised Union Manor to again apply for an exception to the 70 square feet per resident requirement. Union Manor's administrator emailed the Department indicating the facility was not required to procure an exception to the square footage requirement and that it would not be doing so.

In May 2017, Union Manor filed a petition for declaratory judgment seeking a determination that it was "exempt from the floor space requirement as it was in existence prior to the adoption of the policy and applicable regulations [the Department sought] to enforce." In its petition, Union Manor relied upon a "grandfather" provision set forth in 19 CSR 30-86.012(6) which permitted certain older facilities to meet a lower minimum floor space requirement of 60 square feet per resident. The Department counterclaimed, seeking to enjoin Union Manor from

3

admitting new residents until (1) it had performed construction necessary to expand the smaller bedrooms to comply with the square footage requirement or (2) reduce its occupancy to 32 residents. The parties filed cross-motions for summary judgment. In April 2019, the circuit court entered judgment in favor of Union Manor and against the Department, finding that the facility was exempt from the 70 square feet per resident requirement. This appeal follows.[2]

## *Discussion*

In reviewing a circuit court's grant of summary judgment, we construe the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "Our review is essentially de novo[,]" and "[t]he propriety of summary judgment is purely an issue of law." *Id*.

---

[2] We note that the prayer for relief in Union Manor's petition for declaratory judgment contained a request for reasonable attorney's fees and costs. The circuit court's judgment does not dispose of this request, which "*can* arrest the finality of the judgment," and implicate this Court's jurisdiction to hear the appeal. *Ruby v. Troupe*, 580 S.W.3d 112, 114 (Mo. App. W.D. 2019). However, a circuit court's failure to address an attorneys' fees issue will impact the finality of the judgment only when the claim is properly pleaded *and* pursued by the requesting party. *Id*. at 114-16. Under the first step, "a party must plead a basis for an award of fees, **in addition to simply including a request for attorney's fees in its prayer for relief**." *Id*. at 115 (emphasis added). Union Manor's petition states only a bare request for attorney's fees and costs without citing any statutory, factual, or other authority for such an award; thus, the request for attorney's fees was not properly pleaded. *Id*. Nor does it appear that Union Manor pursued its request for attorney's fees beyond merely mentioning it in the petition. *Id*. at 116. Under *Ruby*, this is an additional and independent reason for deeming the circuit court's judgment final and appealable, notwithstanding its failure to address the issue of attorneys' fees.

We also observe that the circuit court's judgment does not expressly dispose of the parties' dueling requests for injunctive relief. "A judgment's silence on an issue should not be deemed a disposition of that issue except where a ruling on one issue necessarily constitutes a ruling on the other." *In re Carl McDonald Revocable Tr. of Oct., 1979*, 899 S.W.2d 138, 139 (Mo. App. S.D. 1995); *see also Long v. Sterling Real Estate Acquisitions, LLC*., 554 S.W.3d 455, 458 (Mo. App. W.D. 2018) ("Where [a] decision on other issues in the case effectively disposes of the issue not specifically adjudged, the judgment is final and appealable.") (citation omitted). Here, the circuit court's judgment indicates that Union Manor is exempt from 19 CSR 30-86.012(6)'s 70 square feet per resident requirement. This determination effectively disposes of Union Manor's request for an injunction, in which the facility sought to prevent the Department from enforcing 19 CSR 30-86.012(6)'s floor space requirements against Union Manor. It also effectively disposes of the Department's request for injunctive relief, in which it sought an order precluding Union Manor from admitting additional residents until it took steps to substantially comply with the 70 square feet per resident requirement.

The Court is satisfied that the instant judgment is final and appealable, and we therefore proceed to review.

4

Summary judgment is properly granted "if there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Hargis v. JLB Corp.*, 357 S.W.3d 574, 577 (Mo. banc 2011) (citation and quotation marks omitted).

Union Manor and other long term care facilities are licensed under the Missouri Omnibus Nursing Home Act. *See* § 198.003, *et seq.* Section 198.009 states that "[t]he provisions of [the Act] shall be administered by the Department." It further authorizes the Department to promulgate rules and regulations necessary to administer the Act. In the instant matter, both parties rely upon a specific regulation promulgated by the Department, which provides as follows:

> Facilities whose plans were approved after December 31, 1987, shall provide a minimum of seventy (70) square feet per resident in private and multiple occupancy bedrooms. This square footage calculation shall include the floor space used for closets and built-in furniture and equipment if these are for resident use and the closet space does not exceed five (5) square feet per resident. Private bedrooms in existing facilities that are required to comply with the requirements of 19 CSR 30-86.043 or 19 CSR 30-86.047, and multiple occupancy bedrooms in facilities licensed between November 13, 1980 and December 31, 1987, shall have a minimum of sixty (60) square feet of floor space per resident.

19 CSR 30-86.012(6).[3]

---

[3] At the time Union Manor applied to be licensed as an RCF II, this provision was located in a different subdivision and employed slightly different language:

> Residential care facilities I and II whose plans were approved or which were initially licensed after December 31, 1987, shall provide a minimum of seventy (70) square feet per resident in private and multiple occupancy bedrooms. This square footage calculation shall include the floor space used for closets and built-in furniture and equipment if these are for resident use and the closet space does not exceed five (5) square feet per resident. Private bedrooms in existing residential care facilities II and multiple occupancy bedrooms in residential care facilities I and II licensed between November 13, 1980 and December 31, 1987, shall have a minimum of sixty (60) square feet of floor space per resident.

19 CSR 30-86.012(5) (2001).

5

The Department contends that this regulation required Union Manor to provide 70 square feet of floor space to each of its residents in single and multiple occupancy bedrooms. Because some of the bedrooms did not comply with regulatory minimum, the Department argues that the circuit court erred in granting judgment in favor of Union Manor and in impliedly denying the Department's petition to enjoin the facility from admitting additional residents. On the other hand, Union Manor argues that because it was licensed in 1985, it is exempt from the 70 square feet requirement.

For simplicity and ease of analysis, we address the Department's points out of order (particularly since our holding with respect to the Department's fourth point bears directly upon our discussion of its other points on appeal). In its fourth point, the Department argues that construing 19 CSR 30-86.012(6) together with other regulations *in pari materia* supports its position that Union Manor is subject to the 70 square feet requirement and is not "grandfathered" in as a facility licensed between November 13, 1980, and December 31, 1987. In support, the Department notes that although Union Manor was initially licensed as an RCF I in 1985, it became licensed as an RCF II in 2004. The Department asserts that Union Manor's change from an RCF I to an RCF II was not simply an upgrade from one class to the next, but actually constitutes licensure as a new facility. Because Union Manor was not licensed as an RCF II until 2004 (several years after the expiration of the "grandfathering" period), the Department contends that it must provide bedrooms with 70 square feet of floor space for each resident.

"Statutory and regulatory interpretation is an issue of law that this court reviews *de novo*." *Davis v. Dir. of Revenue*, 481 S.W.3d 880, 884 (Mo. App. S.D. 2016). We apply the same principles of interpretation to regulations promulgated by state agencies that we do to statutes enacted by the General Assembly. *Marquart v. Dir. of Revenue*, 549 S.W.3d 56, 59

6

(Mo. App. E.D. 2018). "Our goal is to ascertain the agency's intent and give effect thereto by considering the plain meaning of the words used in the regulation." *Id*. (citation omitted). When a regulation's meaning is plain and unambiguous, "there is nothing to construe and we will give effect to the language as written without resorting to rules of statutory construction." *Doe v. St. Louis Cmty. Coll.*, 526 S.W.3d 329, 336 (Mo. App. E.D. 2017). The *in pari materia* doctrine instructs that where a regulation's language is unclear, we may attempt to discern its meaning by considering it in light of other regulations on the same or related subject matter. *See Jefferson ex rel. Jefferson v. Missouri Baptist Med. Ctr.*, 447 S.W.3d 701, 707 (Mo. App. E.D. 2014).

The "grandfather clause" that Union Manor seeks to enforce is divided in its application between ***private*** bedrooms and ***multiple occupancy*** bedrooms.[4] With respect to private bedrooms, it provides as follows:

> Private bedrooms in existing facilities that are required to comply with the requirements of 19 CSR 30-86.043 or 19 CSR 30-86.047… shall have a minimum of sixty (60) square feet of floor space per resident.

19 CSR 30-86.043 prescribes the administrative, personnel, and residential care requirements for level II residential care facilities, while 19 CSR 30-86.047 outlines the requirements for assisted living facilities. In its brief, Union Manor argues that "19 CSR 30-86.012(6) designates only 'existing facilities' and makes no further distinction as to class of facility, nor does it introduce any other circumstance in establishing the exemption as to bedroom square footage."

---

[4] 19 CSR 30-85.012(38) similarly allows "intermediate care" and "skilled nursing facilities" to meet a lower minimum floor space requirement in in "multiple bed resident rooms" (80 square feet) than in "one (1)-bed resident rooms" (100 square feet). Regulations in other states also distinguish between multiple occupancy and private (single) bedrooms in prescribing minimum floor space requirements. *See, e.g*., 105 Mass. Code Regs. 150.320 ("For [hospital-based long term care facilities], the floor area of resident bedrooms … shall not be less than 100-square feet for single occupancy rooms and 80-square feet per bed for multiple occupancy rooms."); Wis. Admin. Code HS § 83.54 (providing that in certain community-based residential facilities, "single occupancy bedrooms shall have a minimum of 80 square feet per resident and 60 square feet per resident in multiple occupancy bedrooms.").

We do not agree that the regulation is so broad. Existing or existing licensed facilities are defined in 19 CSR 30-83.010(16) as follows:

> Existing or existing licensed facility— Shall mean a long-term care facility which was licensed and in operation or one whose plans were approved prior to June 10, 1981 for a skilled or intermediate care facility or **prior to November 13, 1980** for residential care facilities and assisted living facilities except as otherwise indicated in 19 CSR 30- 86.012, 19 CSR 30-86.022 and 19 CSR 30- 86.032.

(Emphasis added). The uncontroverted facts contained in the summary judgment record indicate that Union Manor was initially licensed as an RCF I in 1985. Accordingly, it is not an "existing facility" as that phrase is defined in the regulations promulgated by the Department. *See Johnson v. Missouri Dep't of Health & Senior Servs.*, 174 S.W.3d 568, 581 (Mo. App. W.D. 2005) ("If a statute defines a term or phrase, that definition must be used."). Because Union Manor is not an "existing facility" under the Department's regulations, its **private** bedrooms do not qualify for the limited exemption described in 19 CSR 30-86.012(6).

We reach the opposite conclusion with respect to Union Manor's **multiple occupancy** bedrooms. In this regard, 19 CSR 30-86.012(6) states that "multiple occupancy bedrooms in facilities licensed between November 13, 1980 and December 31, 1987, shall have a minimum of sixty (60) square feet of floor space per resident." Again, it is uncontroverted that Union Manor was initially licensed in 1985. It is therefore entitled to take advantage of the regulation's "grandfather clause" with respect to its multiple occupancy bedrooms. In those bedrooms, Union Manor need not comply with the regulation's 70 square feet requirement and instead may comply with the regulation by providing floor space of 60 square feet per resident.

The Department contends, however, that for purposes of applying 19 CSR 30-86.012(6)'s "grandfather clause," Union Manor's 1985 licensure as an RCF I is immaterial. Instead, the Department asserts that when Union Manor applied to be licensed as an RCF II in April 2004, it

8

was seeking licensure as a *new facility* subject to all of the regulatory requirements then in existence, which included the mandate that it provide its residents with 70 square feet of bedroom floor space. Essentially, the Department argues that when Union Manor sought to upgrade its license status from RCF I to RCF II, it held the same position as an applicant that had never been licensed at all.

In support, the Department relies chiefly upon two other state regulations. 19 CSR 30-82.010(2)(B) states as follows:

> If the facility changes from a residential care facility to any other level or if an assisted living facility changes to an intermediate care or skilled nursing facility, the facility shall comply with construction, fire safety and physical plant rules applicable *to a new or newly licensed facility* as defined in 19 CSR 30-83.010.

(Emphasis added). 19 CSR 30-83.010(33) prescribes the following definition for the terms "new or newly licensed facility":

> New or newly licensed facility--Shall mean a long-term care facility whose plans are approved or which is licensed after June 10, 1981 for a skilled nursing or intermediate care facility or after November 13, 1980 for residential care facility or assisted living facility except as otherwise indicated in 19 CSR 30-86.012, 19 CSR 30-86.022, and 19 CSR 30-86.032

Nothing in this definition supports the proposition that an already-licensed residential care facility forfeits its claim to 19 CSR 30-86.012(6)'s square footage exemption when it seeks to upgrade its license status. Indeed, reading the two provisions together, 19 CSR 30-83.010(33) indicates that a residential care facility seeking to change from one level to another should be treated as a newly licensed facility "*except as otherwise indicated in 19 CSR 30-86.012*." As noted above, 19 CSR 30-86.012(6) affords an exemption to the 70 square feet requirement (in multiple occupancy bedrooms) to facilities which, like Union Manor, obtained their licensure between November 13, 1980, and December 31, 1987. By using the phrase "except as otherwise

9

indicated in 19 CSR 30-86.012," the Department clearly signaled its intent to exclude long term care providers like Union Manor from its general rule that facilities which change their licensure status should be treated as new or newly licensed facilities. Had the Department intended to limit the application of 19 CSR 30-86.012(6)'s "grandfather clause" to facilities that do not change their license class, it would have included express language to that effect when it initially promulgated the regulation. *See Peoples v. Med. Protective Co.*, 584 S.W.3d 339, 345 (Mo. App. W.D. 2019).

Union Manor obtained licensure as an RCF I in 1985. It was therefore not an "existing facility" and is not entitled to an exemption from 19 CSR 30-86.012(6)'s 70 square feet requirement in its *private* bedrooms. It is, however, exempted from the 70 square feet requirement in its *multiple occupancy* bedrooms. As a facility licensed between November 30, 1980, and December 31, 1987, it is not required to provide 70 square feet of floor space in multiple occupancy bedrooms, and may comply with the Department's regulations by furnishing 60 square feet of floor space per resident in such rooms.

The circuit court's judgment suggests that Union Manor may take advantage of 19 CSR 30-86.012(6)'s square footage exemption with respect to both categories of bedrooms:

> WHEREFORE, the Court has considered the evidence and arguments of the parties and now orders, adjudges, and decrees as follows:
>
> A. Judgment is entered in favor of [Union Manor] and against [the Department], the Court finding that [Union Manor] is exempt from the 70 square feet minimum by reason of 19 CSR 30-012(6) [sic], having been licensed between November 13, 1980 and December 31, 1987 as stated in the regulation[.]

As we have explained more fully above, this is only true as applied to Union Manor's *multiple occupancy* bedrooms. Thus, the Department's Point IV is granted in part and denied in part.

10

In its second point on appeal, the Department argues that the circuit court erred in ruling that the Department was equitably estopped from applying the 70 square feet per resident requirement to Union Manor. In its grant of summary judgment, the circuit court found that Union Manor "should be entitled to the doctrine [of equitable estoppel] as [the Department] knew or should have known that [Union Manor] was in no position to make improvements once [Union Manor] became a residential care facility II."

A party asserting the bar of equitable estoppel must demonstrate the existence of the following elements: "(1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon; (2) action by the other party on the faith of the admission, statement, or act; and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement, or act." *Ryan v. Ford*, 16 S.W.3d 644, 651 (Mo. App. W.D. 2000) (citation omitted). However, this defense is seldom applied against a government entity:

> "Equitable estoppel may run against the state, but only where there are exceptional circumstances and a manifest injustice will result." "Equitable estoppel is not applicable if it will interfere with the proper discharge of governmental duties, curtail the exercise of the state's police power or thwart public policy, and is limited to those situations where public rights have to yield when private parties have greater equitable rights."

*Gosal v. City of Sedalia*, 291 S.W.3d 822, 828–29 (Mo. App. W.D. 2009) (internal citations omitted).

In this case, the Department maintained from its initial response to Union Manor's application for RCF II licensure that a number of its bedrooms fell short of the 70 square feet per resident requirement set forth in 19 CSR 30-86.012(6) (and former subdivision (5)). It granted Union Manor multiple exceptions to this requirement to allow the facility more time to bring itself into compliance with the Department's standards. To comply with the square footage

11

requirement, Union Manor would need to either reduce its census or renovate the offending private bedrooms to provide more floor space.[5] We do not believe that, as a matter of law, either of these consequences constitutes an "exceptional circumstance" or "manifest injustice" so as to apply the bar of equitable estoppel against the Department. Furthermore, application of the doctrine would interfere with the Department's governmental duty of ensuring that appropriate standards are observed in long term care facilities for the safety and comfort of residents of such facilities. *See Gosal*, 291 S.W.3d at 828–29.

Accordingly, the circuit court erred in granting summary judgment in favor of Union Manor on the ground that the Department was equitably estopped from requiring the facility to comply with the regulation's square footage requirement. Point II is granted.

In its third point on appeal, the Department contends that the circuit court erred in ruling that 19 CSR 30-86.012(6) constituted an impermissible retrospective law as applied to Union Manor. Retrospective or retroactive laws are specifically proscribed by Article I, Section 13 of the Missouri Constitution:

> That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be enacted.

"Retrospective or retroactive laws are those which take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability in respect to transactions or considerations already past." *Garozzo v. Missouri Dep't of Ins., Fin. Institutions & Prof'l Registration, Div. of Fin.*, 389 S.W.3d 660, 665 (Mo. banc 2013) (citation and internal quotation marks omitted). Missouri appellate courts have instructed that "[t]his test

---

[5] This burden is particularly light considering the summary judgment record indicates that *only one* of Union Manor's *private* bedrooms provides less than 70 square feet of floor space.

12

is disjunctive"—that is, a law may be retroactive in operation if it impairs a vested right *or* imposes a new duty or obligation with respect to past transactions. *Four Seasons Racquet & Country Club Prop. Owners Ass'n, Inc. v. Butler*, 539 S.W.3d 122, 129 (Mo. App. S.D. 2018).

Here, the circuit court found that Union Manor was licensed in 1985 as an RCF I. Because 19 CSR 30-86.012(6) was promulgated after the facility's initial licensure, it ruled that the square footage requirement could not be applied to Union Manor. In this regard the court concluded that "[a] statute cannot be construed to effect [sic] rights vested at the time of enactment of the statute." This conclusion was erroneous because a license to operate a business is not a "vested right," but rather a privilege. *Missouri Real Estate Comm'n v. Rayford*, 307 S.W.3d 686, 691 (Mo. App. W.D. 2010).

> "[T]he license remains subject to the laws and regulations which authorized its issuance in the first place, which is the antithesis of a vested right. Those laws and regulations may impose criteria for eligibility, both initially *or following licensure*, may require annual or other renewals, and may impose conditions on a license's continued viability tied to standards of conduct."

*Id.* (emphasis added). In short, because a license is no more than a "revocable grant of permission," it is not a vested right, and 19 CSR 30-86.012(6) does not run afoul of the first prong of the retrospectivity analysis. *Id.* at 692.

To the extent Union Manor may be arguing that 19 CSR 30-86.012(6) imposes a "new obligation, duty or disability with respect to past transactions," our cases have addressed this prong of the retrospectivity test as well. Union Manor's rights under Article I, Section 13 of the Missouri Constitution are not impaired by the Department's imposition of a new criterion for eligibility (the 70 square feet per resident requirement) because it has no right to expect the regulations governing its continued licensure as a residential care facility will remain unchanged. *See State v. Young*, 362 S.W.3d 386, 391 (Mo. banc 2012); *Rayford*, 307 S.W.3d at 696 ("[A]n

13

applicant has no entitlement to believe that the law with respect to eligibility requirements for licensure will always remain the same."). Indeed, *Rayford* specifically found that Article I, Section 13 ***does not*** prohibit the application of new legal requirements to a first-time applicant for professional licensure or "to license renewals, if the license expires following a defined period of time with no reasonable assurance the license will be summarily renewed subject only to timely re-application and/or payment of a required fee." 307 S.W.3d at 695; *see also* § 198.015.3 (indicating that a license to operate a residential care facility will be effective for a maximum of two years).

The circuit court erred when it determined that Article I, Section 13 prohibited the Department from requiring Union Manor to provide its residents with 70 square feet of floor space in single and multiple occupancy bedrooms. Point III is granted.

We turn finally to the Department's first point on appeal, in which it argues that the circuit court erred in failing to grant it summary judgment on its counterclaim seeking to enjoin Union Manor from accepting new residents until the facility achieved substantial compliance with 19 CSR 30-86.012(6). "It is well established in Missouri law that the [d]enial of a motion for summary judgment is not subject to appellate review, even when an appeal is taken from a final judgment and not [solely] from the denial of a motion for summary judgment." *Energy Creates Energy, LLC v. Heritage Grp*., 504 S.W.3d 142, 150 (Mo. App. W.D. 2016) (citation and internal quotation marks omitted). Point I is therefore dismissed.

As previously noted,[6] the circuit court's judgment had the effect of denying, as a matter of necessity, the parties' competing requests for injunctive relief. However, because we have

---

[6] *See* footnote 1, *supra*.

determined that the trial court erroneously interpreted applicable regulations, it now remains to be determined whether the Department is entitled to the injunctive relief it requested in light of our opinion and modified judgment.

### *Conclusion*

Under Rule 84.14, this Court may "award a new trial or partial new trial, reverse or affirm the judgment or order of the trial court, in whole or in part, ***or give such judgment as the court ought to give***." (Emphasis added). Union Manor's claim for declaratory relief involves the purely legal issue of whether and how 19 CSR 30-86.012(6)'s "grandfather clause" should be applied to Union Manor. Thus, while we reverse the declaratory judgment in part, further proceedings in the circuit court are not necessary on the declaratory relief sought. We exercise our discretion under Rule 84.14 to enter the declaratory judgment that the circuit court should have given respecting the proper application of 19 CSR 30-86.012(6), and the circuit court's declaratory judgment is accordingly modified to provide as follows:

> A. Union Manor's petition for declaratory judgment is granted in part and denied in part, the Court finding that Union Manor is exempt from the 70 square feet minimum by reason of 19 CSR 30-86.012(6) with respect to its ***multiple occupancy*** bedrooms, but is fully subject to the 70 square feet minimum with respect to its ***private*** bedrooms. In ***multiple occupancy*** bedrooms, Union Manor is required to provide 60 square feet of floor space per resident.

We remand the case to the circuit court to conduct further proceedings in accordance with this opinion. On remand, the circuit court will have the power to determine what (if any) injunctive relief the Department may be entitled to given our declaration regarding the proper application of 19 CSR 30-86.012(6).

/s/ *Thomas N. Chapman*
Thomas N. Chapman, Presiding Judge

All concur.

15