

# Missouri Court of Appeals
## Southern District
### Division Two

DAVID ANDREW DAVIS,          )
                                   )

      Petitioner-Appellant,        )
                                   )

vs.                               )        No. SD33481
                                   )

DIRECTOR OF REVENUE,       )        Filed February 9, 2016
                                   )

      Respondent-Respondent.    )

### APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

#### Honorable Richard D. Copeland, Associate Circuit Judge

<u>REVERSED WITH DIRECTIONS</u>

David Andrew Davis appeals the trial court's judgment sustaining the revocation of his driving privileges by the Director of Revenue ("Director") pursuant to sections 302.505 and 302.525.[1] Davis claims the trial court erred in finding: (1) the arresting officer had probable cause to arrest Davis based upon a belief that he was driving a motor vehicle while the alcohol concentration in his blood, breath, or urine was .08% or higher by weight; and (2) Davis was driving with a blood-alcohol content ("BAC") .08% or higher by weight.[2] Finding merit in his second claim because the trial court erred in admitting the results of his breath test, Davis's

---

[1] References to section 302.505 are to RSMo Cum.Supp. 2013; references to section 302.525 are to RSMo Cum.Supp. 2013, effective 10-01-13.

[2] Davis's appeal was stayed pending resolution of ***Stiers v. Dir. of Revenue***, ___ S.W.3d ___, No. SC94840, 2016 WL 143230 (Mo. banc January 12, 2016), which addressed Davis's second point relied on.

second point is granted.[3] The trial court's judgment is reversed, and the Director is ordered to reinstate Davis's driving privileges.

## Factual and Procedural Background

On November 16, 2013, Davis was arrested for driving while intoxicated. After that arrest, a law enforcement officer requested that Davis provide a breath sample on a BAC Datamaster[4] ("the breath analyzer"). Davis agreed, and Carterville police officer Christopher Shonk administered the breath test. The test resulted in a measurement of .104% BAC. The last maintenance check[5] of the breath analyzer used to obtain Davis's breath sample was performed by Officer Shonk three days earlier on November 13, 2013.

Director thereafter revoked Davis's driving privileges for one year for operating a motor vehicle with a BAC that exceeded the legal limit. Davis filed a request for an administrative hearing to contest the revocation of his driving privileges. After an administrative hearing, Davis petitioned for and received a trial *de novo* as provided by section 302.535.1.

On June 20, 2014, the trial *de novo* was held. Director offered Exhibit B, a certified copy of the maintenance report for the breath analyzer used to measure Davis's BAC. Davis objected, stating, "I don't think there's been a foundation laid to establish that this particular breathalyzer complied at the time it was given with the -- with the Code of State Regulations." Davis requested and the trial court allowed Davis to voir dire Officer Shonk regarding the breath analyzer's calibration. Officer Shonk had completed the maintenance report form and indicated that the instrument was calibrated using only one of three potential standard solution

---

[3] Without the result of Driver's breath test, Director failed to establish Driver's BAC was .08% or higher as is required for a license revocation under section 302.505.1. *See Bozarth v. Dir. of Revenue*, 168 S.W.3d 78, 84 (Mo.App. 2005).

[4] The BAC Datamaster is one of several breath analyzer models approved by the Department of Health and Senior Services for determination of the alcoholic content of blood from a sample of expired air. 19 CSR 25-30.050.

[5] The Code of State Regulations defines maintenance checks as "the standardized and prescribed procedures used to determine that a breath analyzer is functioning properly and is operating in accordance with the operational procedures established by the Department of Health and Senior Services[.]" 19 CSR 25-30.011(2)(F).

concentrations—a 0.10% solution.  There were no other maintenance report forms admitted at trial or performed by Officer Shonk.  Davis then renewed his objection, directed the trial court to 19 CSR 25-30.051, and stated that under that regulation, the breath analyzer was improperly calibrated using only one solution.  The trial court overruled Davis's objection.

Director also asked Officer Shonk the result of Davis's breath test.  Davis again objected on the same grounds and was overruled.  Officer Shonk then responded that Davis's test had resulted in a .104% BAC.

Later, Exhibit A, a certified copy of Director's records was offered into evidence.  These records included, *inter alia*, Sarcoxie police officer Jacob Williams's incident report, the alcohol influence report, and Davis's breath-test results.  Davis made the same objection to the breath analyzer's calibration, and that objection was again overruled by the trial court.  Both parties later submitted post-trial briefs on the issue of calibration of the breath analyzer used to test Davis's breath.

The trial court thereafter issued its "Findings of Fact, Conclusions of Law and Judgment" on August 1, 2014, sustaining Director's revocation of Davis's driving privileges.  The trial court found that the evidence adduced by Director was credible, there was probable cause to arrest Davis for an alcohol-related traffic offense, and Davis was driving with a BAC of .08% or higher.

## Discussion

First we address Davis's second point relied on.  In that point, he claims:

> The [t]rial [c]ourt erred in finding that [Davis] was driving with a BAC .08% or higher in that 19 CSR 25-30.051(2), Effective 12/30/12, required maintenance of the machine with standard vapor concentrations of .04%, .08% AND .10%, and the maintenance was conducted on this particular machine with only one solution, which had a vapor concentration of .10%.

3

Davis argues that "[b]ased on the lack of correct maintenance for failure to test the machine at all three concentration levels, sufficient foundation was not laid to admit the results of the breathalyzer." Davis further argues and Director concedes, in their respective briefs, that the supreme court's decision in *Stiers v. Dir. of Revenue*, ___ S.W.3d ___, No. SC94840, 2016 WL 143230 (Mo. banc January 12, 2016), resolves this issue. In accordance with the principles announced in *Stiers*, we grant Davis's second point.

*Standard of Review*

In a driver's license suspension case, the judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *White v. Dir. of Revenue*, 321 S.W.3d 298, 307-08 (Mo. banc 2010) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). Our review is *de novo* where the facts relevant to an issue are not contested and the issue is one of law. *White*, 321 S.W.3d at 308.

As to point two, Davis does not challenge any trial court factual findings, but instead argues the trial court erroneously applied 19 CSR 25-30.051.2. Statutory and regulatory interpretation is an issue of law that this court reviews *de novo*. *Stiers*, 2016 WL 143230 at *3. The facts relevant to point two are not contested, and it involves the interpretation of a regulation. Therefore, our review is *de novo*.

*Analysis*

Director shall suspend a driver's license upon determination that the person was arrested upon probable cause to believe he or she was driving a motor vehicle while the alcohol concentration in his or her blood, breath, or urine was at least .08% by weight. Section 302.505.1. An aggrieved party may request an administrative hearing on the issue. Section 302.530.1. Thereafter, the party may additionally petition the circuit court of the county where

4

the arrest occurred for a trial *de novo*. Section 302.535.1. In reviewing the revocation of a driver's license under section 302.505.1, the trial court is to determine whether the suspension is supported by a preponderance of the evidence that: "(1) the driver was arrested on probable cause for violating an alcohol-related offense; and (2) the driver's blood alcohol concentration exceeded the legal limit of .08 percent." *White*, 321 S.W.3d at 309 n.11. Director bears the burden of establishing grounds for the revocation. *Id.* Thus, Director bore the burden of proving by a preponderance of the evidence that Davis's BAC exceeded the legal limit of .08%.

"[The] Director may introduce evidence of a breathalyzer test to establish that the driver's BAC exceeded the legal limit." *O'Rourke v. Dir. of Revenue*, 409 S.W.3d 443, 447 (Mo.App. 2013). "[S]ection 577.037 sets out the rules governing admission of breath test results and one of the requirements for admission is that the breath test be validly performed in accordance with DHSS[6] regulations." *Stiers*, 2016 WL 143230 at *6. The specific DHSS regulations that must be followed for the proper admission of breath tests are set out in 19 CSR 25-30.011 to 25-30.080. *Stiers*, 2016 WL 143230 at *3. In particular and relevant to this appeal, the calibration and accuracy verification standards for breath analyzer machines set forth in 19 CSR 25-30.051 must be followed to satisfy the foundational requirements for admission of breath-test results into evidence. *Stiers*, 2016 WL 143230 at *4. Regulation 19 CSR 25-30.051.2,[7] as promulgated by DHSS and in effect at the time of Davis's breath test, stated:

> (2) Standard simulator solutions, used to verify and calibrate evidential breath analyzers, shall be solutions from approved suppliers. The standard simulator

---

[6] "DHSS" refers to the Missouri Department of Health and Senior Services. *Stiers*, 2016 WL 143230 at *6; *see also Scheumbauer v. Dir. of Revenue*, 350 S.W.3d 868, 869 (Mo.App. 2011).

[7] This version of 19 CSR 25-30.051.2 was in effect from December 30, 2012, to February 28, 2014. Davis's breath test occurred on November 16, 2013. Because this version of the regulation was in effect at the time of his breath test, it governs the admissibility of the test results at Davis's trial *de novo*. *See Stiers*, 2016 WL 143230 at *6. 19 CSR 25-30.051.2 has since been amended and the most recent version, effective February 28, 2014, changed the word "and" to "or" so that thereafter the regulation requires testing with only one solution. *Stiers*, 2016 WL 143230 at *7.

solutions used shall have a vapor concentration within five percent (5%) of the following values:
>    (A) 0.10%;
>    (B) 0.08%; ***and***
>    (C) 0.04%.

(Emphasis added).

Here, Davis argues that the breath analyzer was not calibrated using approved techniques and methods of DHSS, in that the calibration requirements of 19 CSR 25-30.051.2 were not satisfied. We agree. In order to satisfy the foundational requirements for admission of Davis's breath-test results, Director was required to demonstrate that Davis's breath test was performed by following the approved techniques and methods of DHSS. *O'Rourke*, 409 S.W.3d at 447. *Stiers* held that 19 CSR 25-30.051 required that three standard solutions at concentrations of 0.10%, 0.08%, and 0.04% be used when calibrating breath analyzer machines. 2016 WL 143230 at *5. Failure to calibrate a breath analyzer in accordance with 19 CSR 25-30.051 renders the breath test invalid. *Stiers*, 2016 WL 143230 at *7.

It is uncontested that the breath analyzer used to perform Davis's breath test was calibrated using only one standard solution concentration—the 0.10% solution—although DHSS regulations required that standard solutions at three separate concentration levels be used to calibrate the machine. Accordingly, the calibration of the breath analyzer used to perform Davis's breath test was not valid. *See id.* at *7. Because the breath analyzer used to perform Davis's breath test was not calibrated following the required DHSS regulations, Director failed to lay a proper foundation for the admission of the breath-test results. Therefore, the results were improperly admitted at Davis's trial *de novo*. In the absence of those test results, there was no

evidence before the trial court to support its finding that Davis was driving with a BAC .08% or higher by weight. Davis's second point is granted.[8]

### Decision

The trial court's judgment sustaining the revocation of Davis's driving privileges is reversed, and the Director is ordered to reinstate Davis's driving privileges.[9] *See **Vernon v. Dir. of Revenue***, 142 S.W.3d 905, 911 (Mo.App. S.D. en banc 2004) (improperly admitted breath test results required reversal and reinstatement of driving privileges); ***Devine v. Dir. of Revenue***, 961 S.W.2d 87, 88 (Mo.App. E.D. 1997) (same).

GARY W. LYNCH, J., opinion author

DON E. BURRELL, P.J., concurs

WILLIAM W. FRANCIS, Jr., J., concurs

---

[8] Because the resolution of Davis's second point is dispositive, we need not reach or address the merits of Davis's first point.

[9] The record before the trial court of the events surrounding Davis's arrest and subsequent revocation indicates that Officer Shonk's breath analysis was the only action taken to quantify Davis's BAC during the relevant time period.